WARREN J. WOOD, appellant, v. IOWA STATE COMMERCE COMMISSION (members), appellees.

No. 50563.

MARCH 6, 1962.

Holliday, Miller & Stewart, by James M. Stewart and Joseph B. Joyce, all of Des Moines, for appellant.

Waldo F. Wheeler, Commerce Counsel, George M. Mariner, Assistant Commerce Counsel, and Robert R. Rydell, Special Assistant Commerce Counsel, for appellees.

GARFIELD, C. J.—The question presented is whether defendant Iowa State Commerce Commission acted illegally, within the meaning of rule 306, Rules of Civil Procedure, in revoking an Iowa contract carrier permit defendant issued to plaintiff under chapter 327, Code, 1958. This in turn depends mainly upon whether there was substantial evidence before the commission to sustain its order. The trial court held there was and upheld the order. Plaintiff has appealed. We affirm the trial court.

(For convenience we disregard the fact the members of the commerce commission are also made defendants.)

The action is in certiorari, under rules 306 to 319, Rules of Civil Procedure. Rule 306 provides the writ shall only be granted when specifically authorized by statute or an inferior tribunal exercising judicial functions exceeds its proper jurisdiction or otherwise acts illegally. It is not claimed here the

writ is specifically authorized by statute. Nor can it be seriously asserted defendant exceeded its proper jurisdiction. It is contended defendant acted illegally in revoking plaintiff's permit because, it is said, the revocation order lacks substantial support in the evidence before the commission.

The case was submitted to the district court upon a transcript of the evidence the commission heard. No other evidence, explanatory of the matters contained in the return to the writ, was offered (see rule 315, R. C. P.). Most of the record here consists of the evidence before the commission.

Code section 327.1, subsection 5, in chapter 327, under which plaintiff's permit was issued, defines a "contract carrier" as "any person who does not hold out to the general public to serve it indiscriminately and who, for compensation, engages in the business of transportation of property by motor truck under individual written contracts, thereby providing a special and individual service required by the peculiar needs of a particular shipper, but does not include, (1) a motor carrier as defined in chapter 325, (2) a truck operator, or (3) a person whose transportation by motor vehicle is in furtherance of a private enterprise other than the business of transportation for others for compensation."

The term "individual written contract" is one "between a contract carrier and a shipper * * * imposing mutual obligations to tender freight and perform transportation, and specifying the charges." Section 327.1, subsection 5.

Section 327.16 provides, "For just cause, after due hearing, the commission may at any time * * * revoke any permit issued." It is not suggested plaintiff was not accorded due hearing.

Section 327.1, subsection 5, states: "The presence of goods originating from more than five shippers on one vehicle at any one time shall be prima-facie evidence that the carrier is a motor carrier and not a contract carrier."

A "motor carrier", as distinguished from a "contract carrier", for present purposes is a person operating a motor vehicle for the public transportation of freight for compensation between fixed termini, or over a regular route, even though there may be irregular departures from such termini or route (section 325.1). No motor carrier may operate without having obtained

from the commission a "certificate of convenience and necessity" (section 325.6).

An inspector for defendant found on one of plaintiff's three trucks in Waterloo goods defendant claims originated from eight or more different shippers which were being transported to docks of Arrow Express Forwarding Company (herein called "Arrow") in Waterloo. There is substantial evidence plaintiff's driver picked up the goods from at least eight different wholesalers or distributors in Waterloo for ultimate transportation to as many different consignees in as many other cities or towns. The city farthest from Waterloo was Storm Lake, about 160 miles to the west. One shipment was to go to Cedar Rapids, about 70 miles southeast of Waterloo. Another was destined for Decorah, about 75 miles northeast.

Before the goods were to reach these ultimate destinations, however, they were to be unloaded and sorted at Arrow's docks and then sent on their journey, perhaps in one of plaintiff's trucks, perhaps in another truck, as appeared most convenient. Plaintiff's wife is employed by Arrow, takes calls from shippers and directs operation of plaintiff's trucks. Plaintiff picked up some goods in cities other than Waterloo, e.g., Cedar Rapids, and transported them.

The goods found on plaintiff's truck were being shipped on shipping tickets which named Arrow as shipper and the wholesaler or distributor where the goods were picked up as "Reference" for the shipment. Transportation charges were paid Arrow and plaintiff received a percentage thereof from Arrow. Several witnesses in charge of shipping the goods found on plaintiff's truck testified before the commission that the only difference in shipments transported by him and those handled by others, which were common carriers, was in the shipping ticket used by Arrow and the usual bill of lading used by common carriers.

One such witness said his company was the shipper of the goods represented by the shipping ticket, he uses Arrow as he would any other carrier and he had no agent to whom he turned over merchandise for shipment by someone procured by the agent.

There is evidence both plaintiff and his wife solicited business for Arrow and that Mrs. Wood explained to at least one of the eight distributors how to make out the shipping ticket. Plaintiff had solicited business for Arrow from three of the eight. It was not one of Mrs. Wood's duties as an employee of Arrow to solicit business for it. One of the shipping clerks testified plaintiff's wife furnished his company a list of towns served and a chart showing the charges for the different weights shipped. Plaintiff's only contract was with Arrow. He had no contract with any of those whom defendant contends were the real shippers.

From the evidence, much of it above summarized, the commission found as facts: (1) the firms named as "Reference" on the shipping tickets were shippers of the goods enumerated thereon; (2) plaintiff was operating outside the scope of his contract carrier permit in that he was knowingly carrying goods for shippers with whom he had no written contract; (3) plaintiff in conjunction with Arrow was operating as a motor carrier of freight without proper authority; and (4) plaintiff's truck was found transporting goods originating from more than five shippers. From these facts defendant held plaintiff was operating as a motor carrier in violation of his permit and there was just cause for its revocation.

I. There can be no dispute as to the law governing the principal question presented. Both sides cite Circle Express Co. v. Iowa State Commerce Comm., 249 Iowa 651, 86 N.W.2d 888, our latest precedent of this kind. The commission there revoked a contract carrier's permit because it found it was in fact acting as a common carrier under the guise of a contract carrier. On review by certiorari the district court held, as we are asked to hold here, there was a total lack of evidence of any holding out by the carrier from which any shipper would have the right to command the use of the carrier's transportation services in the absence of a written contract. We reversed the district court and sustained the commission's order.

Our Circle Express opinion points out it is not the court's function in certiorari to review findings of fact by the lower tribunal having jurisdiction if sustained by any competent and substantial evidence, unless it otherwise acted illegally, and

the court should examine the evidence only to determine whether the findings are thus sustained. The opinion also makes these observations (pages 660, 662 of 249 Iowa, pages 894, 895 of 86 N.W.2d):

"Encroachment by contract carriers in the field of * * * common carriers, whether by design or subterfuge, cannot be permitted.

"* * * The true character of plaintiff's operation should be determined by what it has been doing rather than just what it says it has been doing [citation]."

Much of the Circle Express decision consists of a discussion, which need not be repeated here, of what is essential to doing business as a common carrier.

Incidentally, before this plaintiff commenced carrying freight at least nominally for Arrow, he was in the transportation business with Circle Express five years.

It is unnecessary to cite precedents other than the Circle Express case for the proposition we are concerned mainly with whether there is substantial evidence to support the commission's findings. This accords with the rule in Iowa in certiorari since the decision in Tiedt v. Carstensen, 61 Iowa 334, 16 N.W. 214. Other precedents to like effect are cited in the Circle Express opinion (at page 654 of 249 Iowa, pages 890, 891 of 86 N.W.2d). See also 73 C. J. S., Public Administrative Bodies and Procedure, section 220. Plaintiff's counsel conceded upon the submission of this appeal that no statute or rule enlarges the scope of review by certiorari in a case of this kind.

Plaintiff's counsel also frankly conceded in oral argument that if plaintiff or Arrow were doing what they both do, he or it would be operating, without authority, as a common carrier (or, as the statute designates it, "motor carrier"), not as a contract carrier. It would seem strange if two entities may combine to do what either may not lawfully do. To sanction such a practice would provide an easy way to circumvent the statutory requirement that a motor carrier must procure a certificate of convenience and necessity. Arrow holds no Iowa permit or certificate.

▮ A vital question upon which the commission's ultimate decision rested was whether the wholesalers or distributors from

which plaintiff's driver picked up the goods found on his truck were the real shippers and Arrow was merely the nominal one. It is a reasonable deduction from the evidence, as the commission found, that they were. It is the function of the commission, not the courts, to weigh the evidence and draw reasonable inferences therefrom. The commission is at least supposed to be an expert agency dealing with a specialized field and peculiarly fit to exercise this function. See 73 C. J. S., Public Administrative Bodies and Procedure, sections 221, 225; 42 Am. Jur., Public Administrative Law, section 217, pages 646 to 648.

█ If evidence supports the finding these eight or more companies were the real shippers, defendant's revocation order has substantial support. Under the provision previously quoted from section 327.1, subsection 5, this fact is itself prima-facie evidence plaintiff was a motor carrier, not a contract carrier. The commission was warranted in finding, as it did in effect, this prima-facie evidence was strengthened rather than rebutted. Certainly it was not conclusively rebutted. The mere fact Arrow was named as shipper on the shipping tickets is not conclusive plaintiff was operating as a contract carrier.

There are several indications in the record plaintiff and Arrow knowingly combined to operate as a common carrier. As stated, plaintiff has solicited business for Arrow. Asked if his purpose in this was to secure business for Arrow which would result in more employment for him he testified, "Naturally we want to increase our business", he expected to benefit from the solicitation and to carry part of the merchandise he solicited. Plaintiff referred to deliveries and pickups from "our warehouse, Arrow's warehouse, to the receivers of the merchandise." Asked where his trucks went from the warehouse he replied, "Any place within the area we serve." To the question what route he took to Cedar Rapids he answered, "We pick our closest and best way to give our customers service." He also testified that at three o'clock each day "We cease taking orders." Although none of these answers is controlling, they are significant when taken together.

II. Plaintiff raises a question of procedure based on defendant's failure to file answer to his petition in certiorari. The petition was filed August 3, 1960. A paper filed May 12, 1961,

entitled "Petitioner's Brief" stated in the first sentence that defendant is in default for failure to file answer to his petition and he moves the court to enter such default. Whether this was before or after the court reviewed the evidence before the commission does not appear. Nor is it shown the motion for default, if it may be called such, was specially called to the court's attention or a ruling thereon requested.

Judgment sustaining defendant's revocation order was entered September 29, 1961. On October 5 plaintiff filed "Motion for Judgment notwithstanding Verdict" or other relief, based on defendant's failure to file answer to the petition. This, it is said, left the allegations of the petition undenied. The court ruled defendant's return to the writ of certiorari was the only proper defensive pleading and constituted its answer to the writ. The motion for judgment notwithstanding was therefore overruled. Plaintiff assigns this as error.

As plaintiff suggests, rule 317, R. C. P., provides the action of certiorari "shall be by ordinary proceedings, so far as applicable." Plaintiff also cites State v. District Court, 248 Iowa 250, 256, 80 N.W.2d 555, 559, in support of his claim our Rules of Civil Procedure apply here and an answer to his petition was required. The cited case was in certiorari to review a bench parole granted in violation of statute. One contention was that the action was criminal, appeal was the sole method of review, and our Rules of Civil Procedure pertaining to certiorari could not be applicable. We held the certiorari action was separate from the criminal proceeding in which the parole was granted and the rules were applicable. One citation in support of this was a 1906 Wisconsin case which states that certiorari is a separate action characterized by pleadings, issues and trial thereof. Our opinion does not support this assigned error. Plaintiff cites no other authorities on this point.

We think this claimed error is without merit. Rule 313, in the division of our rules governing certiorari, requires a return to the writ. And rule 315 provides, "When full return has been made, the court shall fix a time and place of hearing, and *hear the parties upon the record made by the return.*" (Emphasis added.) The rule goes on to state that the court may receive such other evidence than that taken in the original proceeding

"as is explanatory of the matters contained in the return." It is apparent from these rules that the hearing in certiorari is at least primarily upon the matter contained in the return to the writ.

Our rules governing certiorari do not provide for an answer to the petition, other than the return to the writ. Other rules requiring an answer in other proceedings are not applicable to certiorari. We have held the issues in certiorari are complete and the case is ready for judgment when the return to the writ is filed. Price v. Town of Earlham, 175 Iowa 576, 579, 580, 157 N.W. 238; Wisdom v. Board of Supervisors, 236 Iowa 669, 683, 19 N.W.2d 602, 609. The Price case observes that the petition and return present the issues. Both precedents hold that ordinarily when the petition and return are filed, a motion for judgment on the pleadings is superfluous. See also as bearing on this assigned error Brown v. Ellis, 26 Iowa 85.

That an answer to a petition in certiorari, other than the return to the writ, is not required in most states see 14 C. J. S., Certiorari, sections 86, 114. "Such * * * return is the only pleading on the part of defendant." Ibid., page 249. See also 10 Am. Jur., Certiorari, sections 18, 19.—Affirmed.

All JUSTICES concur except BLISS, J., not sitting.