R. DALE BUTLER, appellee, v. PENSION BOARD OF THE POLICE DEPARTMENT, appellants.

No. 52223.

DECEMBER 13, 1966.

Philip T. Riley, Anthony T. Renda, John F. McKinney, Jr., Robert D. McAllister, Gary H. Swanson and David Kelly, all of Des Moines, for appellants.

H. M. Coggeshall, of Des Moines, for appellee.

SNELL, J.—Appellee, a retired police matron, sought review by certiorari of denial of retirement disability benefits by the Pension Board.

R. Dale Butler, plaintiff and appellee herein, was at the time of her application for retirement a police matron with the police department of the City of Des Moines. She had served as a member of the police department for twenty-five years, and was entitled to the benefits provided under chapter 411, Code of

Iowa, "Retirement Systems for Policemen and Firemen."

Board of Trustees of the Police Retirement System of the City of Des Moines is a duly constituted board and the members thereof under the provisions of chapter 411, Code of Iowa. For convenience we will refer to defendants as the Pension Board.

On June 23, 1965, plaintiff filed with the Pension Board her application for retirement under the statutes. She asked for retirement effective July 24, 1965. The effective date sought was her 65th birthday. The type of pension sought was accidental disability, i.e., two-thirds salary pursuant to sections 411.6(5) and 411.6(6), Code of Iowa.

With her application plaintiff submitted a letter stating that she had a hypertensive cardiovascular disease that she attributed to the daily strain and tension of police duty. She also submitted a statement from the chief of police showing her salary schedule for the past five years.

Plaintiff's application was supported by letter dated June 25, 1965, from Dr. Paul From, plaintiff's physician, addressed to the chief of police. Doctor From detailed his findings from a two-day evaluation of plaintiff's condition. He stated his impression as: "Hypertensive Cardio-Vascular Disease with blood pressure 200/100, non-specific changes in ECG, essentially normal heart size, sinus rhythm, compensated." He then set out her current medical treatment. His prognosis was: "I believe her disease process will be permanent, and will require constant medical attention in the future."

Section 411.5(9), Code of Iowa, provides for a medical board to aid the Pension Board. Dr. Floyd M. Burgeson, a member of the medical board, by letter to the Pension Board dated July 9, 1965, reported that he had examined plaintiff. He found her physically incapacitated for further performance of duty and that such an incapacity is likely to be permanent. He said further:

"* * * that said disability ( ) is (X) is not the natural and proximate result of an injury or disease incurred in or aggravated by the actual performance of duty at some definite

time and place and I recommend that she be retired from active duty upon a pension and that her disabilities, if any, are as follows:

"Hypertensive cardiovascular disease. Osteoarthritis with multiple joint involvement."

From this quotation it should be noted that Doctor Burgeson did not attempt to attribute plaintiff's condition to any particular incident.

Dr. James E. Kelsey, a member of the medical board, examined plaintiff on July 14, 1965. He reported his findings in detail. We quote the significant part of his report:

"Impression: I do not feel that Mrs. Butler is mentally or physically incapacitated for further performance of duty. It seems to me that she could certainly work until the date of her retirement. She has hypertensive cardiovascular disease, the cause of which is not known but it is probably the type of hypertension that will respond to weight reduction. I recommend that Mrs. Butler be retired from active duty on the 24th of July, when she becomes 65 years of age. I do not feel that this should be a disability retirement."

Dr. Dennis H. Kelly, Jr., a member of the medical board, examined plaintiff on July 13, 1965. He agreed "that she is certainly entitled to retire by reason of her general physical condition." He did not find heart disease the predominant reason for retirement.

On August 19, 1965, Doctor From further advised defendant-board as follows:

"R. Dale Butler has been under my professional care since October 1958. She was first diagnosed as having high blood pressure on January 24, 1963. Since that time, she has taken medication for high blood pressure, and has developed symptoms and signs of heart disease secondary to high blood pressure and coronary artery heart disease.

"She is unable to perform her duties as a policewoman because of her medical illnesses.

"She was last examined August 17, 1965. On June 21 and June 22, 1965, she had a complete physical examination so that

all diagnoses were resubstantiated, and an up-to-date disability rating could be determined.

"My diagnosis is that of Hypertensive and Coronary Artery Heart Disease with high blood pressure, abnormal electrocardiogram, and angina pectoris. She is obligated to constantly treat this condition with medication and in my opinion, is unable to work because of this diagnosis."

The secretary of the board was directed to arrange for further examination of plaintiff by a heart specialist.

At the request of defendant-board plaintiff was examined on August 27, 1965, by Dr. Herman J. Smith, a heart specialist, of the Internal Medical Clinic.

Doctor Smith reviewed plaintiff's medical history, reports of previous examinations and examined plaintiff. He reported in detail. Under American Medical Association tables he evaluated plaintiff's "whole man disability" attributable to diseases of the cardiovascular system at 51 percent.

At a meeting of the Pension Board on August 17, 1965, plaintiff testified in person. She reviewed her service, her duties and her disabilities. The most strenuous part of her work was in handling drunken women and mental cases subjecting plaintiff to physical violence. She has been taught jujitsu in the department and had a gun, but because of her condition was loath to attempt physical exertion.

The municipal code setting out the nature of the work, desirable knowledge, abilities and skills of a police matron was introduced.

At a meeting of the board on October 27, 1965, plaintiff's application was denied.

Upon denial of plaintiff's application the district court granted certiorari and after hearing sustained the writ and directed the allowance of plaintiff's pension as provided in subsections 5 and 6 as amended of section 411.6, Code of Iowa. Defendant has appealed.

I. Relative to police matrons the municipal code provides, among many other things, as follows:

"NATURE OF WORK.

"This is routine work supervising female prisoners and maintaining order in the women's quarters of the city jail.

"An employee in this class is responsible for the welfare and safe custody of all female prisoners and internees in the care of the police department. * * *

"ILLUSTRATIVE EXAMPLES OF WORK.

"Books and searches female prisoners.

"Acts as jailer in the women's quarters of the city jail, maintaining discipline and orderly conduct among the female prisoners. * * *

"Prepares female prisoners for and escorts them to show-up, fingerprinting and questioning, arraignment, and trial. * * *

"DESIRABLE KNOWLEDGES, ABILITIES and SKILLS.

"Working knowledge of the methods used in controlling and caring for persons held under police custody, or ability to learn quickly and apply such methods and techniques. * * *

"Good physical condition and health with freedom from serious physical defects as indicated by a physical examination."

The evidence was uncontroverted that plaintiff had some heart disease and that it developed during her employment in the police department. There was not a scintilla of evidence that her physical condition was such as to qualify her for work as a police matron or do the things required by the municipal code.

Doctor Smith, the heart specialist examining plaintiff for defendant-board, found 51 percent "whole man disability." No one has suggested that a woman with 51 percent disability is in any condition to handle drunken, disturbed or resentful female prisoners. No one claims that she was in "good physical condition and health with freedom from serious physical defects * * *", as outlined by the municipal code.

It should be kept in mind that plaintiff was a police matron. She was not employed in a calm or sedentary position.

To show that she was disabled as a police matron it was not necessary that she be disabled from all activity. A heart condition may disable a police officer. City of Iowa City v. White, 253 Iowa 41, 111 N.W.2d 266.

Doctor Kelsey did not feel that plaintiff was incapacitated for further performance of duty. He did not say what duty. His examination was on July 14. Plaintiff had already stopped working. The doctor recommended that plaintiff be retired from active duty on July 24. That was only 10 days after examination. Doctor Kelsey thought plaintiff should be retired but was not in sympathy with a disability retirement. For the answer to that problem we must look to the statute.

The uncontroverted evidence showed plaintiff suffered from heart disease. She no longer possessed the qualifications for police matron outlined by the municipal code. She was disabled for duty as police matron. Her disability developed during her 25 years of service with the police department. She retired and everyone thought she should.

II. In this case with uncontroverted facts as distinguished from opinions the legislature has provided the answer. Section 411.6(5), Code of Iowa, provides:

"Accidental disability benefit. Upon application of a member in service or of the chief of the police or fire departments * * * any member who has become totally and permanently incapacitated for duty as the natural and proximate result of an injury or disease incurred in or aggravated by the actual performance of duty at some definite time and place * * * shall be retired by the * * * board of trustees, provided, that the medical board shall certify that such member is mentally or physically incapacitated for further performance of duty, that such incapacity is likely to be permanent and that such member should be retired. * * *

"Disease under this section shall mean heart disease * * * and shall be presumed to have been contracted while on active duty as a result of strain * * *."

In the light of this statute there was a service connected disability. It was not necessary for plaintiff to pinpoint any particular event as the cause of her condition.

III. This case involves certiorari and not appeal. Rule 306, Rules of Civil Procedure, provides:

"When writ may issue. A writ of certiorari shall only be granted when specifically authorized by statute; or where an

inferior tribunal, board or officer, exercising judicial functions, is alleged to have exceeded its, or his proper jurisdiction or otherwise acted illegally."

 In certiorari it is neither the function nor privilege of the court to pass upon the wisdom or soundness of an inferior tribunal's discretion but jurisdiction and legality may be reviewed.

 In the case at bar there was no statutory provision for appeal from or review of the determination and order of the defendant-board, but if the order is without support or contrary to the statute it may be reviewed by certiorari.

In City of Sioux City v. Civil Service Commission, 247 Iowa 1254, 1258, 78 N.W.2d 833, we said:

"However, where there is no substantial evidence to support the findings upon which are based its conclusions of law, the inferior tribunal, in making its determination, acts illegally, within the meaning of R. C. P. 306." (Citations)

In the case at bar as in the cited case the record does not support the decision of the Pension Board. "Hence, it acted illegally in making the decision and the same was reviewable by certiorari."

The trial court said that it was "conclusively established that the plaintiff had qualified for the accidental disability benefits, and that it would be a clear and manifest injustice to deny her such benefits." We agree.

The case is—Affirmed.

GARFIELD, C. J., and LARSON, MOORE and BECKER, JJ., concur.

RAWLINGS and MASON, JJ., dissent.

STUART, J., takes no part.

THORNTON, J., not sitting.

RAWLINGS, J.—I respectfully dissent.

This case stands in certiorari. The municipal pension board denied petitioner a disability pension. The trial court reversed.

We have repeatedly held certiorari presents only a question of law and does not entitle the petitioner to a review of the evidence by the reviewing court. City of Iowa City v. White, 253 Iowa 41, 48, 49, 111 N.W.2d 266, and Dickey v. Civil Service Commission, 201 Iowa 1135, 1139, 1140, 205 N.W. 961.

We have also held the power of the courts in certiorari does not extend to or include a determination of disputed questions of fact upon which the inferior board or tribunal acted. Ebert v. Short, 199 Iowa 147, 153, 154, 201 N.W. 793.

In fact the task of the trial court and the duty of this court is not to review findings of fact by the pension board if they are sustained by *any* competent and substantial evidence. Courts should only examine the evidence presented to determine whether there was competent and substantial evidence to support the findings by the lower tribunal. Wood v. Iowa State Commerce Commission, 253 Iowa 797, 801, 802, 113 N.W.2d 710, and Circle Exp. Co. v. Iowa State Commerce Commission, 249 Iowa 651, 653, 654, 86 N.W.2d 888.

Significantly Dr. James E. Kelsey reported to the board in part as follows:

"Mrs. Butler stated that she would retire on the 24th of July, 1965 but she stopped working on the 5th of July, 1965 because she wants to get a disability retirement. She stated that this would add to her retirement income. * * * Impression: I do not feel that Mrs. Butler is mentally or physically incapacitated for further performance of duty. It seems to me that she could certainly work until the date of her retirement. She has hypertensive cardiovascular disease, the cause of which is not known but it is probably the type of hypertension that will respond to weight reduction. I recommend that Mrs. Butler be retired from active duty on the 24th day of July, when she becomes 65 years of age. I do not feel that this should be a disability retirement."

Also, Dr. Dennis H. Kelly, Jr., examined petitioner and reported to the board: "* * * she is certainly entitled to retire by reason of her general physical condition. I do not, however, find that heart disease is the predominant reason for her retirement."

On review the trial court held in part as follows: "In the case at bar the Court expressly finds that the evidence and reports before the Board conclusively established that the Plaintiff had qualified for the accidental disability benefits, and that it would be a clear and manifest injustice to deny her such benefits."

Under the record this is nothing more nor less than a finding of fact by the trial court and a substitution of its own judgment for that of the lower tribunal. This is not in accord with our prior holdings.

The evidence in this case is in dispute and there is competent substantial evidence supporting the decision of the pension board.

I would reverse and remand with instructions to the trial court to affirm.

MASON, J., joins in this dissent.