Kevin BENSON, Appellee,

v.

**FORT DODGE POLICE PENSION BOARD OF TRUSTEES,**
Appellant.

No. 90–462.

Court of Appeals of Iowa.

Nov. 29, 1990.

Maurice C. Breen, City Atty., for appellant.

MacDonald Smith, Smith & Smith, Sioux City, for appellee.

Heard by OXBERGER, C.J., and DONIELSON and SACKETT, JJ.

DONIELSON, Judge.

Kevin Benson was employed as a police officer in Fort Dodge, Iowa, from August 1972 until April 1980. He was placed on ordinary disability retirement in April 1980 because of a cardiovascular disease manifested by dangerously high blood pressure. He received ordinary disability benefits under Iowa Code section 411.6(3). *See Benson v. Fort Dodge Police Pension Board of Trustees,* 312 N.W.2d 548 (Iowa 1981) (rejecting Benson's claim that he was entitled to higher paying accidental disability pension benefits).

In March 1983, the Fort Dodge Police Pension Board of Trustees (the Board) became aware of the fact that Benson had obtained employment with the Manson, Iowa Police Department. This information precipitated a directive from the Board to Benson; Benson was to be reexamined to determine whether his disability continued to exist. The resulting report from the University of Iowa Hospitals concluded that neither Benson's hypertension nor the medication necessary to control it appeared to interfere with Benson's job performance. The Board found that Benson's disability no longer existed and Benson returned to work briefly in August 1983.

Benson was soon placed on sick leave because of continuing high blood pressure levels and a "secondary" depressive disorder related to job stress in the Fort Dodge Police Department. He was discharged due to mental and physical incapacity. Another suit ensued and the supreme court determined that Benson had properly been discharged due to mental and physical incapacity but was entitled to an ordinary disability pension. *See Benson v. Fort Dodge Police Pension Board of Trustees*, 374 N.W.2d 392 (Iowa 1985).

Benson applied for reinstatement as a police officer in September 1986, pursuant to section 411.6(7). In November 1986, the University of Iowa Hospitals and Clinics reported to the Board that there was no evidence Benson had symptoms of psychiatric or emotional illness at that time and he was able to return to work. Benson's treating psychiatrist, Dr. Larsen, reported to the Board that Benson was no longer suffering from secondary depression and could return to work. Benson's treating physician, Dr. Birkett, reported to the Board that Benson's hypertension had improved and he could return to work. When the Board eventually considered Benson's application, in 1988, the Board found Benson remained incapacitated and ordered that he remain on retirement.

Benson filed a petition for writ of certiorari in district court. The court sustained the writ, finding Benson able to return to work. The court noted Benson had not been treated for hypertension or depression since 1984 and concluded Benson "does not suffer such an increased risk of injury so as to find him incapacitated for further duty." The Board now appeals.

Certiorari is an ordinary proceeding triable as a law action. On review, questions of fact resolved by the deciding tribunal are not usually reviewable. The question posed is whether the decision is supported by any competent and substantial evidence, and the burden of showing illegality rests upon an asserting party. The fact that a different or opposite result may have been fully justified by the record is of no importance. A trial de novo is not ordinarily permitted on certiorari.

*Carstensen v. Bd. of Trustees*, 253 N.W.2d 560, 561–62 (Iowa 1977).

The Board contends that the district court erred in finding there was not substantial evidence to support its decision. It states that it came to its conclusion based on Benson's medical history: (1) there was medical evidence that the underlying latent condition which gave rise to the high blood pressure is still present, even though the symptoms have dissipated and (2) Benson is subject to a 50/50 possibility of a reoccurrence of the depressive disorder. The Board argues that in *Cloud v. Fort Dodge Police Pension Board*, 372 N.W.2d 313 (Iowa App.1985), this court defined "incapacity" so as to include conditions that are not currently disabling but increase the risk of injury if regular duties were to resume. The Board contends a 50/50 chance of reoccurrence of depression, in combination with the continued existence of a latent condition which gave rise to hypertension, constitutes incapacity under such a definition.

█ We reject the Board's interpretation of *Cloud v. Fort Dodge Police Pension Board*. In *Cloud*, plaintiff, a policeman, sought accidental disability benefits. The plaintiff's examining doctors submitted a report stating he was not permanently incapacitated for duty but recommended he be given light duty or a desk job and that he not be an active duty police officer. *Id.*

at 315. The Pension Board determined the plaintiff was not totally incapacitated for further duty and denied the plaintiff benefits. This court affirmed the district court's reversal of the Board's denial of benefits. In *Cloud* we found the plaintiff had shown he was permanently incapacitated as a police officer where the evidence indicated he could not perform the regular duties of an active duty law enforcement officer without great risk of injury to his already injured neck and where there were no light duty jobs for officers in the city. This court did not hold that an increased risk of injury alone was sufficient to constitute incapacity under Iowa Code Chapter 411. The Board's reading of *Cloud,* which expands the term "incapacity" to mean the possibility of a future reoccurrence of a disabling condition alone, is rejected.

■ The evidence submitted was uncontroverted that Benson was not presently suffering from depression or hypertension and could return to his previous duties and function. The district court was correct in concluding substantial evidence does not support the Board's finding that Benson remained incapacitated. The district court properly sustained Benson's writ of certiorari, annulling the Board's decision.

Iowa R.App.P. 15(a) provides that the appendix is to contain only relevant portions of the record. The appendix submitted in this case is much too long (the parties cited to only 59 of 344 pages included in the appendix). It includes irrelevant (i.e., portions of the Board's minutes of meetings unrelated to Benson) and redundant information (i.e., two copies of the same doctor's report; both the minutes and the transcription of Board meetings). We admonish counsel to prepare more carefully the contents of an appendix in the future. *See State v. Oppelt,* 329 N.W.2d 17, 21 (Iowa 1983); *Bethesda Foundation v. Bd. of Review,* 453 N.W.2d 224, 229 (Iowa App.1990).

AFFIRMED.

OXBERGER, C.J., concurs.

SACKETT, J., dissents.

HABHAB, J., takes no part.

SACKETT, Judge (dissenting)

I dissent. I would affirm the decision of the pension board and reverse the trial court.

The issue is whether there is substantial evidence to support the board's decision that plaintiff was incapacitated for duty as a police officer. The board argues there is substantial evidence.

A series of doctors have examined plaintiff. All of the doctors at the University of Iowa Hospitals and Clinics, Dr. Birkett and Dr. Larsen came to the conclusion that plaintiff's condition was not such as would physically or mentally preclude him from performing the duties of a police officer. But the board also considered the fact that all of the medical experts had likewise agreed earlier that the plaintiff was capable of performing police duties and had been wrong.

Dr. Larsen, the treating and attending psychiatrist, in his testimony states:

Q. In our 1983 testimony to this board, you identified three diagnoses that you have made. One was hypertension—A. Right.

Q. two was the situational disturbance—A. Yes.

Q. and three was the secondary depression. Is it my understanding that now—or in May of 1988, when you made your last evaluation, you were of the opinion that Kevin Benson was no longer incapacitated by hypertension? A. At that time my understanding was that his blood pressure had been controlled, yes.

Q. Is the underlying latent condition which gives rise to increases in blood pressure under certain conditions something that totally goes away or is it something that continues to exist, but is currently latent and simply not being activated? A. Having to do with blood pressure, there are two parts. One is that, yes, some people have an increased risk. And I would have to say with Kevin there would be some evidence that he has that risk, but it's now latent.

The other part, however, is that some part is under a person's control; that is, how much you weigh, how—your activity level, and what—how you handle your life is under your control. And that part probably can go away or be dealt with accurately by the person. So I'd say some of both.

Q. So in this particular instance, there is some continuing latent potential for reoccurrence of hypertension? A. Some risk, yes.

Q. The situational disturbance that you diagnosed, is it your opinion as of May 1988, that he is no longer incapacitated as a result of the situational disturbance? A. Well, that is my belief, that the situation of events from '79 through '83 has been dealt with and had passed. And it was my understanding that there was evidence to that fact, and so I felt the situational part of things had passed.

Q. With respect to the secondary depression diagnosis, that was secondary to the other two, was it not? A. I believe that, yes.

Q. Okay, but you're telling us that the—there is a 50/50 probability in males that once you have had this—once you've been diagnosed with depression, that it's going to reoccur, is that correct? A. That's my belief.

Q. So am I correct in saying that again while the symptoms of the depression as you have described have now abated, that the underlying latent potential, whatever it is in the human psyche among this 10 percent of people that makes them susceptible to depression, still exists in these people? A. Yes. To a greater degree than ever, that's correct.

Q. So the underlying condition of hypertension and the underlying condition which gives rise to secondary depression that incapacitated Mr. Benson, while in total abatement, still exists as of this day? A. To some degree.

Q. Do you have an opinion as to that degree, Doctor? A. Well, I guess that becomes real difficult. I can only offer the statistics that I have already stated, which is the 50 percent risk of another episode, and some subjective observation of time since 1983 that we've not during these last five or six years had another episode.

So there is some risk there. It's higher than average, and that's the reason we're having such a difficult time making a determination is that it's a subjective guess or an educated guess only as to whether this is a risk that could be tolerated....

This testimony must be considered in light of the previous medical history. Dr. Larsen has testified that there is a 50/50 probability of reoccurrence. The secondary depression and hypertension conditions which Dr. Larsen believes may reoccur, are life-threatening conditions. Dr. Larsen clearly outlined the conditions and the consequences in his letter to the chief of police on August 16, 1983. In that letter, the doctor concludes:

I believe Mr. Benson cannot return to work for the Fort Dodge Police Department without significant risk of morbidity or mortality....

This diagnosis by Dr. Larsen was reached four months after three physicians at the University of Iowa Hospitals and Clinics found Mr. Benson fit for duty, wherein they said:

(2) Neither his hypertension nor medications that he is taking to control the hypertension appear to interfere with his present job performance.

and only three years after he had been placed on retirement pursuant to Chapter 411.6(3) of the 1979 Code of Iowa for the first time.

The plaintiff has had a history of erratic hypertension and depression that has occurred on two previous occasions within the past ten years, the consequences of which are life-threatening. The high degree of probable reoccurrence is substantial and is evidence of a current incapacity to perform police duties.

The varying medical opinions over the years support a finding the plaintiff's condition is unpredictable and that the severity

of the condition and the probability of reoc-
currence are risky, particularly for a per-
son performing as a police officer. The
local board that had the most direct contact
with the issue determined not to reinstate
the plaintiff. Their decision should prevail.