**CITY OF CARROLL, Iowa, Appellant,**

v.

**MUNICIPAL FIRE & POLICE
RETIREMENT SYSTEM
OF IOWA, Appellee.**

No. 95–958.

Court of Appeals of Iowa.

July 26, 1996.

William J. Sueppel of Meardon, Sueppel, Downer & Hayes, Iowa City, for appellant.

Alice E. Helle of Brown, Winick, Graves, Gross, Baskerville, Schoenebaum & Walker, P.L.C., Des Moines, for appellee.

Heard by CADY, P.J., and HUITINK and VOGEL, JJ.

CADY, Presiding Judge.

The City of Carroll seeks review by certiorari of a decision by the Board of Trustees of the Municipal Fire and Police Retirement System granting former police officer David Disburg accidental disability benefits. The district court denied the writ. We affirm.

Disburg began working as a police officer for the city of Carroll in 1973. He was plagued by a history of medical problems, including a heart condition that resulted in heart attacks in 1986 and 1989. After each heart attack, doctors released Disburg to return to work without restrictions.

Disburg suffered a stroke in 1993. He subsequently applied for accidental disability benefits with the Municipal Fire and Police Retirement System. As a police officer for the city, Disburg was a member of the retirement system. He was referred to the system's medical board for examination. The medical board concluded Disburg was totally incapacitated from performing his duties as a police officer. In making their decision, it considered his stroke, as well as his history of diabetes, hypertension, coronary artery

disease, and hypercholesterolemia. However, upon further written questions by the system, the medical board confirmed the stroke was the cause of the disability and Disburg's stroke was not caused by his heart condition.

The system subsequently approved Disburg's application for accidental disability benefits. The City appealed, claiming Disburg should only have been awarded ordinary disability benefits since he was incapacitated for duty as a result of the stroke, not his heart disease.[1]

A hearing was held before the disability appeals committee. Following the hearing, the appeals committee, on its own initiative, sought additional evidence from one of the medical board doctors, David Schwartz. The committee requested Dr. Schwartz to give a written opinion considering whether Disburg would also be incapacitated for duty as a police officer due to his heart condition. Dr. Schwartz responded Disburg's two heart attacks would be grounds for disability.

The committee then reconvened the hearing to give the City an opportunity to examine Dr. Schwartz. Dr. Schwartz acknowledged the stroke disabled Disburg from working as a police officer, but also confirmed his written opinion that Disburg was further unable to perform his duties because his heart disease placed him at very high risk of another heart attack when engaged in the strenuous physical activities of a police officer.

The appeals committee entered a decision recommending Disburg be granted accidental disability pension, which the Board of Trustees adopted. The City filed a writ of certiorari with the district court, claiming the decision was illegal and not supported by substantial evidence. The district court denied the writ.

The City argues on appeal the award of accidental disability benefits was not supported by substantial evidence and was based on an erroneous legal standard. It also contends the appeals committee exceeded its authority by seeking additional evidence after the hearing was concluded.

## I. Standard of Review

■ There are no statutory provisions for appeals from decisions by the Board of Trustees of the Municipal Fire and Police Retirement System. *See* Iowa Code ch. 411 (1993). A party who desires to challenge a decision by the board, however, may seek judicial review by filing a petition for writ of certiorari. *City of Cedar Rapids v. Mun. Fire & Police Retire. System*, 526 N.W.2d 284, 286 (Iowa 1995).

■ Our review in certiorari actions is limited. We consider whether the board acted within its statutory authority or whether substantial evidence supports its decision. *Id.* at 287. Evidence is substantial when a reasonable mind would accept it as adequate to reach the findings, even though the evidence would support contrary inferences. *Id.* It is not our function to pass on the wisdom or soundness of the board's discretion. *Butler v. Pension Bd. of Police Dept.*, 259 Iowa 1028, 1035, 147 N.W.2d 27, 30 (1966).

## II. Disability Benefits

■ The statutory retirement system provided for police officers includes "ordinary" and "accidental" disability benefits. Iowa Code § 411.6(3), (5). These benefits are awarded when a member becomes mentally or physically incapacitated for further performance of duty, the incapacity is likely to be permanent, and the member should be retired. *Id.* To qualify for an "accidental" disability benefit, however, the member must additionally show the incapacity was "the natural and proximate result of an injury or disease incurred in or aggravated by the actual performance of duty at some definite

---

1. The distinction between ordinary and accidental disability benefits can be significant. An ordinary disability benefit generally equals 50% of the beneficiary's average final compensation, while an accidental disability benefit typically equals 60% of the average final compensation. Iowa Code §§ 411.6(4), (6) (1995). Additionally, the employer is required to pay future medical expenses relating to the disabling medical condition of an accidental disability beneficiary. Iowa Code § 411.15. *See generally Benson v. Fort Dodge Police Pension Bd. of Trustees*, 312 N.W.2d 548, 550 (Iowa 1981).

time and place." Iowa Code § 411.6(5). Thus, two conditions must be shown to qualify for an accidental disability retirement. First, the applicant must suffer from an injury or disease incurred in or aggravated by the actual performance of duty at some definite time and place. Second, the applicant must be totally and permanently incapacitated for duty as a natural and proximate result of the injury or disease. *Reisner v. Bd. of Trustees*, 203 N.W.2d 812, 814 (Iowa 1973).

■ A "disease" under the statute is limited to the heart, lungs, or respiratory tract. Iowa Code § 411.6(5)(c). Thus, accidental disability benefits may be awarded only if the disease involves the heart, lungs or respiratory tract. *Cedar Rapids*, 526 N.W.2d at 287. Once this definition is met, however, the statute presumes the disease was incurred in or aggravated by the actual performance of duty at some definite time and place. *Reisner*, 203 N.W.2d at 815.

The City challenges the award of accidental disability benefits to Disburg on two related grounds. First, it argues the statute does not permit an award based on the risk of developing a disease that will totally and permanently incapacitate an individual in the future. Secondly, it asserts the award was not supported by substantial evidence since Disburg performed all the duties of his job notwithstanding his underlying heart problems.

■ We acknowledge the risk of developing a heart disease or injury at some time in the future does not necessarily support an award of an accidental disability pension. *See Benson v. Fort Dodge Police Pension Bd. of Trustees*, 312 N.W.2d 548, 551 (Iowa 1981). In this case, however, ample evidence exists to support a finding Disburg actually suffered from a heart disease. He suffered two heart attacks during the last seven years of his employment, and medical evidence confirmed he had a diseased heart. Thus, the issue was not whether Disburg was at risk for developing a heart disease, but whether he was totally and permanently incapacitated

from working as a police officer as a proximate cause of his existing heart disease.

Once an officer has suffered a work-related disease or injury we believe the system may properly consider any risks associated with the disease or injury in further evaluating whether it renders the officer totally and permanently incapacitated from performing his or her duties. *See Cloud v. Fort Dodge Police Pension Bd. of Trustees*, 372 N.W.2d 313, 315 (Iowa App.1985). Moreover, an officer with a heart disease should not be precluded from showing a total and permanent incapacity for duty simply because no evidence indicates he or she has been unable to perform the required duties. If the duties can be performed, but only at a recognized and substantial risk to the health of the officer, it may be reasonable to conclude the officer has become totally and permanently incapacitated for duty. *Id.*

The City further argues permitting an award of accidental benefits based on potential risks without evidence of an inability to perform the required duties of the job creates an unworkable standard. We disagree. The standard is not altered, but accommodates a consideration of the particular facts. An applicant for benefits must still show he or she is totally and permanently incapacitated for duty as a natural and proximate cause of a work-related heart disease. However, the incapacity for duty may be supported not only by evidence of actual physical inability to perform the duties, but by evidence of the potential medical risks involved in the performance of those duties, due to the presence of the disease. Without considering the potential risks, an applicant for benefits would be required to fall victim to the disease or injury in the performance of some duty before accidental benefits would be available. This would create an unworkable, inequitable standard. We conclude the appeals committee did not apply an erroneous legal standard.[2]

---

2. The City does not argue Disburg was not suffering from a heart disease at the time of his stroke or that there were light duty jobs available for Disburg that could have been performed without

a substantial risk of a heart attack. *See Benson v. Fort Dodge Police Pension Bd. of Trustees*, 465 N.W.2d 305, 307 (Iowa App.1990).

■ We next turn to the City's claim the award was not supported by substantial evidence. We acknowledge Disburg's own physicians released him to return to work, without restrictions, after his second heart attack in 1989. We also observe the City presented uncontradicted testimony Disburg performed all the essential duties of the job prior to suffering the stroke in 1993. Even Dr. Schwartz confirmed the stroke suffered by Disburg in 1993 disabled him from his job as a police officer.

On the other hand, Dr. Schwartz opined Disburg was also unable to perform his duties as a police officer because his coronary artery disease placed him at very high risk of another heart attack when placed under full physical stress. In particular, the doctor believed Disburg was unable to safely respond to emergency situations involving strenuous physical activity. Dr. Schwartz did not believe Disburg should have been released to return to work following his heart attacks.

■ It is unnecessary for a police officer to show he or she is disabled from all activities before establishing a total and permanent incapacity for duty. *Butler*, 259 Iowa at 1035, 147 N.W.2d at 30. A heart condition may disable a police officer. *Id.*, 147 N.W.2d at 30.

Moreover, substantial evidence may exist to support a decision by the pension board to award benefits even though most of the examining doctors rendered a contrary opinion. *See Terranova v. Bd. of Trustees of Fire & Police Employees Retire. Sys.*, 81 Md.App. 1, 566 A.2d 497 (1989) (opinions by three doctors' that a police officer was not fit to return to work did not make a contrary report by a fourth doctor insubstantial); *Ross v. Fire & Police Pension Ass'n.*, 682 P.2d 496 (Colo. App.1984) (sufficient evidence to support board's decision existed even though two of the three physicians rendered contrary opinions). Dr. Schwartz was a member of the retirement system's medical board, and was qualified to assess the ability of police officers to perform their duties. Nothing suggests the board could not rely on his testimony as the foundation for its decision. *See*

*Schmitz v. Iowa Dept. of Human Services,* 461 N.W.2d 603, 608 (Iowa App.1990).

Mindful of our standard of review, we find substantial evidence to support the decision of the board. Even though the evidence would have supported a contrary conclusion, we cannot say reasonable minds could not reach the same findings as the board. We find no error in the district court's denial of the City's writ of certiorari.

### III. Additional Evidence

■ The City finally asserts the committee exceeded its authority when it sought additional evidence after the hearing. It claims there is no statutory or administrative authorization for the committee to reopen the evidence.

We believe the power granted to administrative boards to decide contested matters implies the exercise of those powers, limited by due process, essential to rendering a just and fair decision. Some discretion beyond the written rules and guidelines must accompany the power to render a decision.

We conclude, absent any contrary legislative intent, the public interest in reaching sound and just decisions supports the actions of the committee in this case. We find no legislative impediment and further find the procedure followed by the appeals committee did not prejudice the City. The City was given a full opportunity to cross-examine Dr. Schwartz and present additional evidence. We approve of the action of the committee as compatible with the mission of reaching a just and fair decision.

**AFFIRMED.**