Kevin BENSON, Appellee,

v.

**FORT DODGE POLICE PENSION BOARD OF TRUSTEES, Appellant.**

Kevin BENSON, Appellee,

v.

**CIVIL SERVICE COMMISSION OF the CITY OF FORT DODGE, Appellant.**

Nos. 84–1359, 84–1449.

Supreme Court of Iowa.

Sept. 18, 1985.

Maurice C. Breen, Fort Dodge, and Terry W. Guinan, Fort Dodge, for appellants.

David A. Opheim of Kersten, Opheim & Carlson, Fort Dodge, for appellee in number 84–1359.

Tito W. Trevino, Fort Dodge, for appellee in number 84–1449.

Considered by REYNOLDSON, C.J., and McCORMICK, LARSON, CARTER, and WOLLE, JJ.

CARTER, Justice.

Affected agencies of the City of Fort Dodge appeal from adverse rulings on (a) police officer's challenge to discharge, and (b) that police officer's entitlement to a disability pension. The district court decided both issues favorably to the officer. We affirm the district court's ruling with respect to the pension issues but reverse the judgment in the discharge case.

Although not consolidated by formal order, these two cases are considered in a single opinion because they arise from a single chain of operative facts. They were tried together in a single district court proceeding. That court rendered one written decision disposing of both cases. Procedurally these cases involve (1) an appeal pursuant to Iowa Code section 400.27 (1983) from a final ruling of the civil service commis-

sion upholding the discharge of appellee, Kevin Benson (Benson), a police officer for the City of Fort Dodge; and (2) a certiorari action commenced in the district court to test the legality of actions taken by the Fort Dodge Police Pension Board of Trustees (pension board) denying Benson's claim for an ordinary disability pension pursuant to Iowa Code section 411.6 (1983). The district court heard the evidence de novo in the discharge case and ordered Benson's reinstatement with back pay. In the certiorari action, the court found that the actions of the pension board were illegal because, on the undisputed evidence, Benson was entitled to an ordinary disability pension.

Benson was employed as a police officer for the City of Fort Dodge from August of 1972 until April of 1980. At that time, he was found to be eligible for an ordinary disability pension by the pension board as a result of cardiovascular disease manifested by dangerously high blood pressure levels. At that time, Benson disputed the pension board's findings to the extent that it had found him to be eligible for only an ordinary disability pension rather than a higher paying "accidental" disability pension. That dispute culminated in our decision upholding the pension board's characterization of Benson's disability. *See Benson v. Fort Dodge Pension Board of Trustees*, 312 N.W.2d 548 (Iowa 1981).

In March of 1983, the pension board became aware of the fact that Benson had obtained employment with the Manson, Iowa Police Department and was acting in the capacity of assistant chief. This information precipitated a directive from the pension board to Benson that he be reexamined as provided in Iowa Code section 411.6(7) for purposes of determining whether his disability continued to exist. Pursu-

ant to this directive, Benson submitted to reexamination by the medical board [1] at the University of Iowa hospitals. The record contains a written report from that board concluding that, although the abnormal blood pressure which formed the basis of Benson's disability retirement continued in a fluctuating and "quite variable" state, neither this hypertension nor the medication necessary to control it appeared to interfere with Benson's job performance with the Manson Police Department. Based upon the foregoing report, the pension board found that Benson's disability no longer existed and that he was capable of performing duties as a police officer in the Fort Dodge Police Department. Benson did not challenge this determination.

Benson was restored to active status on August 1, 1983. After working intermittently for fifteen days, which included a period of hospitalization to control high blood pressure levels, Benson was placed on sick leave as a result of a medical report sent to the chief of police by Dr. Ronald Larsen, a Mason City, Iowa psychiatrist who had examined him at the request of his family physician concerning a possible psychiatric cause for Benson's continuing high blood pressure levels. Dr. Larsen's report indicated that Benson was experiencing a deterioration of physical health and episodes of depression directly related to job stress in the Fort Dodge Police Department and was exhibiting dangerously high blood pressure levels of 170 over 120. In explaining his report at the subsequent hearing before the pension board, Dr. Larsen indicated that, when the lower number in the blood pressure ratio exceeds ninety, a potential life-threatening risk exists.

At or about the time he was placed on sick leave, Benson requested of the pension board that he be reexamined for purposes

---

1. Iowa Code section 411.5(9) (1983) provides: The board of fire trustees and the board of police trustees jointly shall designate a medical board to be composed of three physicians who shall arrange for and pass upon all medical examinations required under the provisions of this chapter, except that for examinations required because of disability three phy-

sicians from the University of Iowa hospitals and clinics who shall pass upon the medical examinations required for disability retirement, and shall report in writing to each board of trustees, respectively, its conclusions and recommendations upon all matters duly referred to it.

of returning him to his former disability pension status. Pursuant to this request, the pension board directed that Benson be reexamined by the medical board of the University of Iowa hospitals. Such reexamination took place in September of 1983. The corresponding findings of the medical board appear in the record through a joint deposition of the three medical doctors comprising the medical board for purposes of Benson's renewed application for disability pension.[2] It was the consensus of the medical board that Benson was suffering from a depressive disorder which prevented him from returning to work at the Fort Dodge Police Department. The medical board viewed such condition as permanent. Some evidence was presented at the hearing before the pension board that Benson, while on sick leave, had performed some work for the Manson Police Department. The medical board expressed an opinion that Benson might be able to work productively in other settings, including other police settings, but indicated that the extent to which this might occur was "kind of speculative." In conjunction with Benson's depressive disorder, the medical board also recognized the hypertension diagnosed by Dr. Larsen to be subsisting and continuing. As to this condition, a member of the board stated "he would have hypertension to be treated whether he had this job or not, if he were under sufficient stress from any other cause. If he had any kind of stress which made him tense and anxious, it would aggravate his blood pressure."

The pension board, upon receiving this deposition of the medical board, found that Benson was medically and physically incapacitated but that, because the incapacity did not extend to the performance of police officer duties in general but only within the Fort Dodge Police Department, he was not eligible for a disability pension under Iowa Code section 411.6.

After the board's determination, a notice of discharge was served on Benson signed by the chief of police. The notice stated that Benson was discharged for failing to properly perform his duties from August 1, 1983 to August 15, 1983 "due to mental and physical incapacity." After this discharge was affirmed by the mayor, Benson appealed to the civil service commission. He contended that the mayor and chief of police had not filed a specification of charges with that commission as required by law and that, in any event, there was no evidence to support his discharge upon the grounds indicated in the notice of discharge. The civil service commission found that, because Benson himself had claimed and was continuing to claim in the pension dispute that he was physically unable to perform his duties with the department, his termination was proper.

Benson challenged the pension board determination by a writ of certiorari in the district court. He challenged the civil service commission's determination by appeal to the district court pursuant to Iowa Code section 400.27. The district court heard these two challenges at a single hearing and filed one written decision in which it determined that Benson was not subject to discharge on the grounds stated in the notice of discharge which had been served upon him and that, based upon the undisputed evidence before the pension board, he was entitled to an ordinary disability pension. The civil service commission and the pension board have appealed from that decision.

### I. *The Pension Board's Appeal.*

The challenge to the action of the pension board was lodged by certiorari proceedings. We have repeatedly held that certiorari presents only a question of law and does not entitle the plaintiff to a reconsideration of the evidence by the reviewing court. *Butler v. Pension Board,* 259 Iowa 1028, 1035, 147 N.W.2d 27, 30–31 (1966); *City of Iowa City v. White,* 253 Iowa 41, 48–49, 111 N.W.2d 266, 270 (1961); *Dickey*

---

**2.** The physicians comprising the medical board were three staff physicians at the University of Iowa hospitals.

*v. Civil Service Commission,* 201 Iowa 1135, 1139–40, 205 N.W. 961, 963 (1925). We have said, however, that if "there is no substantial evidence to support the findings upon which are based its [the tribunal's] conclusions of law, the ... tribunal, in making its determination, acts illegally." *City of Sioux City v. Civil Service Commission,* 247 Iowa 1254, 1258, 78 N.W.2d 833, 835 (1956).

■ Notwithstanding the district court's limited scope of review in the pension dispute, we find that it was correct in concluding that Benson is entitled to receive an ordinary disability pension and that the pension board acted illegally in determining otherwise. The applicable statute provides:

Upon the application of a member in service or of the chief of the police or fire departments, respectively, any member *shall* be retired by the respective board of trustees, not less than thirty and not more than ninety days next following the date of filing such application, on an ordinary disability retirement allowance, provided, that the medical board after a medical examination of such member shall certify that said member is mentally or physically incapacitated for further performance of duty, that such incapacity is likely to be permanent and that such member should be retired.

Iowa Code § 411.6(3) (emphasis added). Unless otherwise provided in the enactment, the word "shall" imposes a duty. Iowa Code § 4.1(36) (1983). Within the context of the present statute, we believe that it is mandatory that a pension board place a member applicant, such as Benson, on ordinary disability status in the event the medical board certifies the applicant's disability.

Application of this principle to the present case required the district court to ascertain whether the medical board did "certify that said member is mentally or physically incapacitated for further performance of duty" and that such capacity is "likely to be permanent." We agree with the district court's conclusion that the findings of the medical board satisfy all of the criteria necessary to establish Benson's entitlement to an ordinary disability pension.

The pension board attempts to avoid the otherwise clear and unambiguous findings of the medical board by contending that the board's findings only relate to Benson's ability to perform police officer duties in the Fort Dodge Police Department. The pension board asserts that it appears beyond dispute in the record that Benson is capable of performing police duties generally at some location outside Fort Dodge. We disagree with the pension board's interpretation of the record.

While the cause of Benson's depressive disorder was linked in the report of the medical board to perceived antagonisms toward him by fellow police officers in the Fort Dodge Police Department, this was not the case with his continuing high blood pressure levels. The record reflects that Benson was previously found to be disabled from this blood pressure disorder, was hospitalized for such disorder within days of returning to work as a police officer, and continued to manifest dangerously high blood pressure levels in September of 1983 while on sick leave. A member of the medical board testified that the blood pressure problem existed independently of Benson's job setting and that, "if he were under sufficient stress from any other cause," it would aggravate the hypertension. There is absolutely no support in the record for the board's claim that police officer's duties in general, whether in Fort Dodge or elsewhere, are not sufficiently stressful as to be incompatible with Benson's cardiovascular disease. We refuse to engage in mere speculation in order to sustain the pension board's contentions.

■ It appears that the pension board's position in the present case is prompted by the fact that Benson has in fact performed work in some capacity with the Manson Police Department. There is, however, no medical evidence which indicates that it is safe for him to do so in light of his diagnosed medical condition. The mere fact that he has other employment does not

disqualify him from a pension if *he is otherwise entitled to receive it.* *Lamb v. City of Boone,* 237 Iowa 273, 276, 21 N.W.2d 462, 465 (1946). *See also Simmons v. Policemen's Pension Commission,* 111 N.J.L. 134, 136, 166 A. 925, 926 (1933); *City of Dallas v. Watkins,* 651 S.W.2d 923, 926 (Tex.App.1983); 3 E. McQuillin, *The Law of Municipal Corporations* § 12.149 (3d ed.1982).

Based on the record made at the hearing before the pension board, Benson established his entitlement to an ordinary disability pension under Iowa Code section 411.6(3) (1983). We affirm the district court's determination confirming his entitlement to such benefits.

## II. *The Civil Service Commission's Appeal.*

We next consider the appeal of the civil service commission from the district court's de novo determination that Benson's discharge was unlawful. The result reached on the pension issue would have mooted the discharge issue had it been imposed by the pension board in October of 1983. Because it was not, Benson was still on the force in November of 1983 when the discharge occurred. Because there have been judgments issued in both cases and Benson has made no election, we review the discharge case on the merits.

■ The district court properly determined that the commission, in seeking to uphold the discharge, was limited to the grounds specified in the notice of charges required by Iowa Code section 400.22 (1983). *Mahaffey v. Civil Service Commission,* 350 N.W.2d 184, 187 (Iowa 1984). While Benson contends that no specification of charges was filed with the commission, we find the record shows that the commission had been furnished a copy of the notice of discharge which had been served upon him and confirmed by the mayor. This notice stated that Benson was being discharged by the chief of police because he "failed to properly perform [his] duties due to ... *mental and physical incapacity to do so* during the period of

August 1, 1983 to [November 3, 1983]." (Emphasis supplied.)

The district court found that the evidence was insufficient to sustain this charge because the chief, when asked at the hearing, could not describe any duty Benson failed to perform or performed inadequately during the few days in August of 1983 when he actually worked his shift as a police officer. We believe the district court's conclusions unduly restrict the clear import of the notice of discharge within the context in which it was given.

■ The thrust of the notice was that Benson was incapacitated from performing the duties of a police officer—a contention entirely consistent with Benson's own characterization of his condition during the relevant time frame. Benson had worked for a few days, apparently adequately performing tasks assigned to him, while in an incapacitated physical condition, marked by intermittent hospitalization. The fact that Benson may have performed his tasks adequately does not serve to defeat the police chief's determination that he was mentally and physically incapacitated. By November 3, 1983, when the notice of discharge was served on Benson, the pension board hearings had been completed. The matters adduced at that proceeding left no doubt with respect to the incapacity which the police chief found to exist. On our de novo review of the evidence, we conclude that the discharge was warranted for the reasons given in the notice, and the district court erred in concluding otherwise. The discharge does not, however, affect Benson's right to a pension based upon the determinations made in the prior division of this opinion.

For the reasons discussed in this opinion, the district court's decision in the certiorari action is affirmed, and its judgment in the pension action is reversed.

AFFIRMED IN PENSION APPEAL; REVERSED IN DISCHARGE APPEAL.