**James HOUSE, Appellant,**

v.

**William MOULDER, Des Moines Chief of Police, Appellee.**

**No. 89–1833.**

Court of Appeals of Iowa.

Feb. 26, 1991.

Joseph L. Marks and Todd E. Babich of Marks, Marks & Marks, Urbandale, for appellant.

Nelda Barrow Mickle, City Sol., for appellee.

Heard by SCHLEGEL, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

This originated as an action for writ of mandamus to compel the defendant police chief to make application on behalf of the plaintiff for retirement benefits under section 411.6(5) of the Iowa Code. The trial court denied the writ when it sustained the defendant's motion for summary judgment. The plaintiff appeals. We affirm.

The plaintiff, James House, was a police officer with the City of Des Moines from April 17, 1972 to August 23, 1985, when he voluntarily quit to take a job in private industry. At the time of his resignation, he ceased making contributions to the police retirement system. On June 5, 1986, House applied for an entry-level position with the Des Moines Police Department. He failed the required physical, and the City denied his application for employment. House felt that he failed the physical because of a knee injury he suffered while a police officer.

There the matter rested until January 4, 1989, when the plaintiff made a demand on the police chief to make application for retirement benefits under section 411.6(5). The police chief declined to do so on the grounds that the plaintiff had voluntarily quit his position with the police department and, as such, was no longer a member of the retirement system.

The plaintiff then filed his petition for writ of mandamus. In his pleadings, he admits that "pursuant to section 411.3(2) ..., [he] ceased being a member in service of the Des Moines police department on or about August 23, 1985." He claims, however, that he still "falls within the statutory definition of a member of the system" and asks that the defendant under section 411.6(5) make application for retirement benefits for him.

Both House and Moulder filed motions for summary judgment. The district court granted Moulder's motion. The trial court determined that House was not a member of the police retirement system as defined by sections 411.1(4) and 411.3(1) because he resigned from his position as a police officer.

## I.

The plaintiff has elected to seek relief by way of a writ of mandamus. Mandamus is an action brought to obtain an order commanding a person to do an act, the performance of which the law enjoins as a duty resulting from an office, trust, or station. Iowa Code § 661.1 (1989). The purpose of writ of mandamus is to require action to enforce an established right and to enforce a corresponding duty imposed by law. *Stith v. Civil Service Commission of Des Moines*, 159 N.W.2d 806, 808 (Iowa 1968). Every proceeding in mandamus must be determined upon its own setting of facts and upon equitable considerations. *Headid v. Rodman*, 179 N.W.2d 767, 770 (Iowa 1970). We accept plaintiff's assertion that mandamus is the proper remedy. As later explained, we find the plaintiff has failed to establish a legal right under Chapter 411.

## II.

Each party filed a motion for summary judgment. Both parties agreed there are no genuine issues of material fact. Our task is to determine whether the law was correctly applied. *Hall v. Barrett*, 412 N.W.2d 648, 650 (Iowa App.1987), citing *Adam v. Mt. Pleasant Bank & Trust Co.*, 355 N.W.2d 868, 872 (Iowa 1984). While the trial court made its findings as a matter of law, we are not bound by the determination if the trial court applied an improper rule of law. *Steinbech v. Continental Western Insurance Co.*, 237 N.W.2d 780, 782 (Iowa 1976). From our review, we conclude the trial court did apply the proper rule of law.

### III.

■ House in his appeal first contends Police Chief Moulder had a duty to make an application for retirement benefits on his behalf based on the language contained in Iowa Code section 411.3(2). That section provides:

Should any member in any period of five consecutive years after last becoming a member, be absent from service for more than four years, or should the member become a beneficiary or die, the member shall thereupon cease to be a member" of the system.

House argues that section 411.3(2) creates an extension of membership in the retirement system to those persons who seek benefits up to four years after employment was terminated. We disagree.

The Iowa legislature provided in section 411.1(4) of the Code as follows: " 'Member' shall mean a member of either the police or fire retirement system as defined by section 411.3." Section 411.3(1) provides all persons who are police officers are members of the police retirement system as a condition of their employment. Plaintiff asks us to read into section 411.3(2) a provision that creates an extension of membership in the retirement system four years after employment is terminated. He asks us to interpret the section to mean that a member who voluntarily resigns from the service and discontinues making payments to the retirement fund nonetheless remains a member of the police retirement system for up to four years after resignation. We are unable to do so.

Section 411.3(2) clearly provides that when any member in any period of five consecutive years after last becoming a member is absent from service for more than four years, he or she ceases to be a member of the system. As it relates to the case at bar, we believe that section 411.3(2) operates in reverse from that which the plaintiff urges. Section 411.3(1) defines members as police officers in the employ of the City's police department; section 411.-3(2) provides that of those "members" (police officers in the employ of the City), police officers who are absent from service for more than four years during the most recent five consecutive years after last becoming a member shall, despite such employment status, cease to be members of the retirement system.

We believe, although we do not necessarily hold, that the language relied upon by plaintiff as it relates to section 411.3(2) addresses certain contingencies involving extended leaves of absence from service of police officers. We agree with the trial court that the subsection in question has no applicability to a person who resigns from his police officer's job and severs his ties with the retirement system. We do not believe it can be read in such manner as to create a retention of membership in the retirement system after a member voluntarily terminates his employment relationship.

At least one jurisdiction has considered a question similar to that presented in the present case. In *Hatfield v. Board of Firemen, Policemen, & F.A. Operators Pension Fund,* 472 S.W.2d 319, 322 (Tex. Civ.App.1971), the Texas Court of Appeals, in considering a denial of pension benefits of a discharged employee, held that as a matter of law, "a pension will not be granted upon an application made after the [member's] resignation, retirement, abandonment of office, removal, dismissal, or discharge."

House cites *Benson v. Fort Dodge Police Pension Bd.,* 374 N.W.2d 392 (Iowa 1985), for the proposition that a member who leaves his or her position with the police department for other employment cannot be denied coverage under the pension system. We find no such authority in *Benson.* In *Benson,* the plaintiff had been a police officer for approximately eight years. 374 N.W.2d at 393. The pension board found that he was entitled to an ordinary disability pension based upon his dangerously-high blood pressure. *Id.* The plaintiff disagreed with the pension board, arguing that he should be entitled to a pension based on accidental disability. *Id.* The Iowa Supreme Court reversed the findings of the pension board, holding that the mere fact that the police officer retired on a

disability pension and had performed work in some capacity for another police department did not disqualify him from a pension where the officer was otherwise entitled to receive it. *Id.* at 395.

As we noted earlier, under section 411.3 membership in the retirement system is a condition of employment as a police officer. Once a police officer voluntarily resigns, the condition of employment no longer exists and his membership terminates.

### IV.

■ House next argues that since he is not a member in service, Chief Moulder has a duty to file an application for benefits for him under Iowa Code section 411.6(5). Section 411.6(5) provides in pertinent part:

5. Accidental disability benefit. Upon application of a member in service or of the chief of the police or fire departments, respectively, any member who has become totally and permanently incapacitated for duty as the natural and proximate result of an injury or disease incurred in or aggravated by the actual performance of duty at some definite time and place, or while acting pursuant to order, outside the city by which the member is regularly employed, shall be retired by the respective board of trustees, provided, that the medical board shall certify that such member is mentally or physically incapacitated for further performance of duty, that such capacity is likely to be permanent and that such member should be retired.

Upon examination of section 411.6(5), we find from its reading that any *member* who has become totally and permanently disabled shall make an application to the board of trustees, who then shall make a decision regarding the *retirement* of that particular individual. Consistent with our finding that section 411.3(2) applies only to current members of the system, we similarly find that section 411.6(5) as well applies only to those individuals who are current members of the system at the time the application is made. It just cannot go unnoticed that plaintiff resigned his position in August 1985, thereby terminating his performance of duty and severing his relationship with the retirement system.

Section 411.6(5) (as is 411.3(2)) is clear and unambiguous. Consequently there need be no resort to rules of construction. *Carstensen v. Board of Trustees*, 253 N.W.2d 560 (Iowa 1977). It is readily noted that section 411.6 speaks in terms of members in service and has reference to retirement and benefits. With this in mind, if a member claims that he has a service-connected injury or disease that renders him or her totally and permanently incapacitated for duty, he or she may make application for early retirement. The board of trustees under that section is vested with the decision-making process of determining whether retirement is to be granted. The board is to grant the request only after the medical board certifies that "such member" is mentally or physically incapacitated "for further performance of duty, that such incapacity is likely to be permanent and that *such member should be retired.*" (Emphasis added.) In this instance, there is no need for the board of trustees to act on a request whether the plaintiff should be retired. He did this himself for back in August of 1985 he submitted his resignation.

We are aware that section 411.6 also makes provisions for the payment of pensions in the event of retirement after an accident. But whether or not you are entitled to a pension depends upon whether you are a member of the system. Here we have concluded that the plaintiff, because of his resignation, is not.

We do not believe that the legislature contemplated that an individual could apply for retirement benefits several years after he or she voluntarily resigned their position with the police department. We find that the legislature was quite specific as to what conditions would trigger the payment of retirement benefits under Chapter 411.

In summary, we hold that House was not entitled to retirement benefits pursuant to Iowa Code section 411.3(2) for he had quit his position and voluntarily severed his relationship with the retirement system. Because he had severed his relationship with the retirement system, it follows that Po-·

lice Chief Moulder had no duty to submit House's application for benefits.

AFFIRMED.