INCORPORATED VILLAGE OF GREAT NECK PLAZA, Individually and on Behalf of All Tenants Residing in Multiple Dwellings Located within the Village, Appellant, v NASSAU COUNTY RENT GUIDELINES BOARD et al., Respondents.

Second Department, July 23, 1979

## APPEARANCES OF COUNSEL

*Lippe, Ruskin, Schlissel & Moscou, P. C. (Richard A. Lippe* and *Steven Wimpfheimer* of counsel), for appellant.

*Harold Zucker (Martin A. Shlufman* of counsel), for respondents.

### OPINION OF THE COURT

MANGANO, J.

■ Plaintiff seeks a declaratory judgment invalidating the 1977-1978 rent guidelines adopted by the Nassau County Rent Guidelines Board on June 29, 1977 on the ground the board violated certain provisions of the State Administrative Procedure Act and the Open Meetings Law (Public Officers Law, §§ 95-106). Special Term granted summary judgment to defendants, finding that the County Rent Guidelines Board is a local entity charged with a quasi-legislative function and, hence, excluded from the purview of the State Administrative Procedure Act, and that no issue of fact has been raised with respect to the propriety of an executive session held during the regular meeting of June 29, 1977. The orders should be affirmed, insofar as appealed from.

The State Administrative Procedure Act was enacted to provide simple, uniform procedures in three types of administrative proceedings: rule-making, licensing and adjudicatory proceedings (§ 100). In view of its broad definition of the term "rule", which includes the "prescription for the future of rates" (§ 102, subd 2, par [a], cl [ii]) it is clear that county rent guidelines boards do, indeed, engage in "rule-making" within the meaning of the State Administrative Procedure Act. However, the State Administrative Procedure Act applies only to State agencies and the issue at bar is whether the county rent guidelines boards are State agencies.

The State Administrative Procedure Act defines "agency" as follows (§ 102, subd 1): "'Agency' means any department, board, bureau, commission, division, office, council, committee or officer of the state, or a public benefit corporation or public authority at least one of whose members is appointed by the governor, authorized by law to make rules or to make final decisions in adjudicatory proceedings but shall not include the governor, agencies in the legislative and judicial branches, agencies created by interstate compact or international agreement, the division of military and naval affairs to the extent it exercises its responsibility for military and naval affairs, the division of state police, the identification and intelligence unit of the division of criminal justice services, the department of correctional services, the state insurance fund, the unemploy-

ment insurance appeal board, the workmen's compensation board."

The Emergency Tenant Protection Act of 1974 (L 1974, ch 576, as amd by L 1976, ch 486) prescribes the establishment and function of the rent guidelines boards as follows:

"§ 4. Establishment of rent guidelines boards; duties. a. In each county wherein any city having a population of less than one million or any town or village has determined the existence of an emergency pursuant to section three of this act, there shall be created a rent guidelines board to consist of nine members appointed by the commissioner of housing and community renewal upon recommendation of the county legislature which recommendation shall be made within thirty days after the first local declaration of an emergency in such county; two such members shall be representative of tenants, two shall be representative of owners of property, and five shall be public members each of whom shall have had at least five years experience in either finance, economics or housing. One public member shall be designated by the commissioner to serve as chairman and shall hold no other public office. No member, officer or employee of any municipal rent regulation agency or the state division of housing and community renewal and no person who owns or manages real estate covered by this law or who is an officer of any owner or tenant organization shall serve on a rent guidelines board. One public member, one member representative of tenants and one member representative of owners shall serve for a term ending two years from January first next succeeding the date of their appointment; one public member, one member representative of tenants and one member representative of owners shall serve for terms ending three years from the January first next succeeding the date of their appointment and three public members shall serve for terms ending four years from January first next succeeding the dates of their appointment. Thereafter, all members shall serve for terms of four years each. Members shall continue in office until their successors have been appointed and qualified. The commissioner shall fill any vacancy which may occur by reason of death, resignation or otherwise in a manner consistent with the original appointment. A member may be removed by the commissioner for cause, but not without an opportunity to be heard in person or by counsel, in his defense, upon not less than ten days notice. Compensation for the members of the board shall be at the

rate of one hundred dollars per day, for no more than ten days a year, except that the chairman shall be compensated at the rate of one hundred twenty-five dollars a day for no more than fifteen days a year. The board shall be provided staff assistance by the division of housing and community renewal. The compensation of such members and the costs of staff assistance shall be paid by the division of housing and community renewal which shall be reimbursed in the manner prescribed in section four of this act. The local legislative body of each city having a population of less than one million and each town and village in which an emergency has been determined to exist as herein provided shall be authorized to designate one person who shall be representative of tenants and one person who shall be representative of owners of property to serve at its pleasure and without compensation to advise and assist the county rent guidelines board in matters affecting the adjustment of rents for housing accommodations in such city, town or village as the case may be.

"b. A county rent guidelines board shall establish annually guidelines for rent adjustments which, at its sole discretion may be varied and different for and within the several zones and jurisdictions of the board, and in determining whether rents for housing accommodations as to which an emergency has been declared pursuant to this act shall be adjusted, shall consider among other things (1) the economic condition of the residential real estate industry in the affected area including such factors as the prevailing and projected (i) real estate taxes and sewer and water rates, (ii) gross operating maintenance costs (including insurance rates, cost of fuel and labor costs), (iii) costs and availability of financing (including effective rates of interest), (iv) over-all supply of housing accommodations and over-all vacancy rates, (2) relevant data from the current and projected cost of living indices for the affected area, (3) such other data as may be made available to it. As soon as practicable after its creation and thereafter not later than July first of each year, a rent guidelines board shall file with the state division of housing and community renewal its findings for the preceding calendar year, and shall accompany such findings with a statement of the maximum rate or rates of rent adjustment, if any, for one or more classes of accommodation subject to this act, authorized for leases or other rental agreements commencing during the next succeeding twelve months. The standards for rent adjustments may be applicable

for the entire county or may be varied according to such zones or jurisdictions within such county as the board finds necessary to achieve the purposes of this subdivision.

"c. In a city having a population of one million or more, the rent guidelines board shall be the rent guidelines board established pursuant to the New York city rent stabilization law of nineteen hundred sixty-nine as amended, and such board shall have the powers granted pursuant to the New York city rent stabilization law of nineteen hundred sixty-nine as amended."

It is readily apparent that county rent guidelines boards have only one function: to file with the State Division of Housing and Community Renewal, before July 1 of each year, their findings for the preceding calendar year, together with a statement of the maximum rate or rates of rent adjustment, if any, authorized for leases or other rental agreements commencing during the next succeeding 12 months. Neither the Commissioner of Housing nor any agency has any power to approve, reject or modify the board's findings and guidelines. Rather, the role played by the State Division of Housing and Community Renewal is one of administration and enforcement, in which connection it is also empowered to issue implementing regulations (Emergency Tenant Protection Act of 1974, §§ 8, 10, 12). (In New York City, the machinery and manpower was in place before 1974 and the city continues to administer and enforce its own locally determined rent guidelines [§ 8, subd c].) However, the costs incurred by the State division in administering the guidelines for smaller cities, villages and towns is borne by said city, village or town not the State (§ 8, subd a).

The members of the county rent guidelines boards are appointed by the Commissioner of Housing and Community Renewal upon the recommendation of the county legislature. Basically, it would appear that the commissioner merely ratifies the local legislature's choices. The members of the board may not be compensated for more than 10 days' work per year (the chairman's maximum is 15 days per year). Given this limited work period and the absence of any local supporting staff, it is not surprising that the State division is obligated to provide the local boards with staff assistance, the costs of which, as well as the members' salaries, are charged back to the locality (§ 4, subd a).

It should also be noted that the Emergency Tenant Protection Act of 1974 contains no procedural requirements whatso-

ever with respect to the work of the county rent guidelines boards. Neither notice of the board's contemplated action, a reasonable opportunity to be heard, nor public hearings are therein required. Such mandated procedures do, however, govern the administration and enforcement of the act by the State division.

It is, thus, clear that the rent guidelines boards are local entities of a quasi-legislative nature, having been created by a local legislative body to respond to a locally declared and locally limited emergency situation. The lending of staff assistance by the State Division of Housing and Community Renewal does not connote such State participation in the decision-making process as would render the boards subject to the requirements of the State Administrative Procedure Act, for the Emergency Tenant Protection Act places sole responsibility for the guidelines determination in the board and requires the locality to reimburse the State for the cost of such assistance. The State division's formal role in the statutory scheme does not begin until after the guidelines have been locally determined and is limited to administration and enforcement in the manner specified in the implementing statute. We, therefore, find that the rent guidelines boards are not agencies of the State within the meaning of the State Administrative Procedure Act and are excluded from its coverage pursuant to subdivision 1 of section 102 thereof.

■ Such an interpretation of the nature of the rent guidelines boards also accords with the clear language of the Public Officers Law. Section 2 of said statute defines "state officer", insofar as here pertinent, as "every officer, appointed by one or more state officers, or by the legislature, and authorized to exercise his official functions throughout the entire state, or without limitation to any political subdivision of the state". A "local officer" is defined to encompass, *inter alia*, "every officer of a political subdivision or municipal corporation of the state, and every officer limited in the execution of his official functions to a portion only of the state." (Public Officers Law, § 2.) Under the Public Officers Law, then, the members of the county rent guidelines boards would clearly be local officers for the Emergency Tenant Protection Act, itself, is applicable only to the Counties of Nassau, Westchester and Rockland (and New York City) and becomes and remains effective only in a city, town or village therein which has declared a housing emergency (Emergency Tenant Protection Act of 1974, § 14).

In other words, the board members are limited in execution of their official function to the particular city, town or village, within the enumerated municipalities, which has declared a housing emergency.

■ Finally, we reject the argument that rent guidelines boards should be deemed agencies of the State because the setting of a fair rental for housing is a matter of State interest and the boards may be said to be exercising a State function or acting as a State instrumentality in rent matters. Such an analysis is far too broad and imprecise to support coverage under the State Administrative Procedure Act. Given the broad scope of the general principles of State sovereignty, adoption of this analysis would also render the New York City Rent Guidelines Board a State agency, which conclusion plaintiff eschews, as well as untold numbers of generally accepted local agencies.

■ As respects the issue of the Nassau County Rent Guidelines Board's compliance with the Open Meetings Law, it appears from the minutes of the meeting of June 29, 1977, as well as the minutes of the meeting of November 10, 1977 which approved the former minutes as amended, and the affidavit of the board's chairman, that the board properly went into a brief executive session to discuss pending litigation with respect to earlier, 1974-1975 rent guidelines (see Public Officers Law, § 100, subd 1, par d). Plaintiff having failed to submit contrary evidence or affidavits of probative value, defendants are entitled to summary judgment on this issue.

DAMIANI, J. P., TITONE and MARGETT, JJ., concur.

Order of the Supreme Court, Nassau County, dated April 5, 1978, affirmed insofar as appealed from, and order of the same court, dated May 3, 1978, affirmed, without costs or disbursements.