**Kevin BENSON, Appellant,**

v.

**FORT DODGE POLICE PENSION BOARD OF TRUSTEES, Appellee.**

No. 66071.

Supreme Court of Iowa.

Nov. 25, 1981.

Greg Knoploh, of Kersten, Opheim, Carlson & Trevino, Fort Dodge, for appellant.

James L. Kramer, of Johnson, Erb, Latham & Gibb, P. C., Fort Dodge, for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, McCORMICK and SCHULTZ, JJ.

McCORMICK, Justice.

The determinative question in this appeal is whether hypertension is heart disease for purposes of disability retirement of a police officer. Plaintiff Kevin Benson challenges a district court certiorari judgment upholding a decision of defendant Fort Dodge Police Pension Board of Trustees denying him accidental disability retirement benefits under section 411.6(5), The Code. We affirm the district court.

I. *Jurisdiction.* At the outset, we must determine whether the district court acquired jurisdiction of the case. In turn, this issue depends on whether judicial review was governed by the Iowa Administrative Procedure Act. Because review was obtained by certiorari without compliance with the procedural requisites of section 17A.19, the district court did not have jurisdiction if the IAPA applies.

■ The judicial review provisions of the IAPA provide the exclusive means for challenging agency action. § 17A.19; *Salsbury Laboratories v. Iowa Department of Environmental Quality*, 276 N.W.2d 830, 833 (Iowa 1979). Thus, if the defendant pension board is an "agency" subject to the IAPA, judicial review of the board's action was available only through the procedures in section 17A.19.

■ The term "agency" is defined in section 17A.2(1). In material part, it provides:

> "Agency" means each board, commission, department, officer or other administrative office or unit of the state. "Agency" does not mean the general assembly, the courts, the governor or a political subdivision of the state or its offices and units.

Thus we must decide whether the local pension board is a board "of the state."

In the sense that the pension board is established under state law, it is a creature of the state. *See* § 411.2. However, it has limited geographical jurisdiction, its members are locally selected, and it makes its own rules. § 411.5. The funds which it administers are derived from member contributions and city appropriations. §§ 411.-1(15), 411.8, and 411.11. Pensions are a liability of the city. § 411.12.

Although the board is a creature of state law, it thus functions in a specific local geographical area and is locally administered and controlled. We believe its function determines its character as a local agency despite its origin in state law. Therefore we hold that it is not a board of the state subject to the IAPA.

Courts in other jurisdictions have employed the same approach in reaching the same result in analogous cases. *See Westchester County v. Rent Guidelines Board*, 71 A.D.2d 655, 419 N.Y.S.2d 6 (1979); *Incorporated Village of Great Neck Plaza v. Nassau County Rent Guidelines Board*, 69 A.D.2d 605, 418 N.Y.S.2d 796 (1979); *Riggins v. Housing Authority*, 87 Wash.2d 97, 549 P.2d 480 (1976). This case is distinguishable from *Frazee v. Iowa Board of Parole*, 248 N.W.2d 80 (Iowa 1976), where the board was established at the state level and involved statewide concerns. *See also State v. Board of Valuation*, 72 Wash.2d 66, 431 P.2d 715 (1967). The board here is locally established and deals with local concerns.

■ Certiorari was the correct method for obtaining judicial review of the board's action.

II. *The merits of the action.* Principles governing our review are summarized in *State v. Cullison*, 227 N.W.2d 121, 126 (Iowa 1975). In the present case plaintiff contends the board acted illegally by incorrectly applying section 411.6(5) to uncontroverted facts which established his right to accidental disability retirement.

Plaintiff sought accidental disability retirement under that provision. After hearing, the board agreed he was physically incapacitated for further performance of duty but held he was entitled only to ordinary disability retirement under section 411.6(3). Because the benefits for accidental disability retirement are substantially greater, the basis of plaintiff's retirement is significant.

Section 411.6(5) authorizes accidental disability benefits to a policeman or fireman

> who has become totally and permanently incapacitated for duty as the natural and proximate result of an injury or disease incurred in or aggravated by the actual performance of duty at some definite time and place ... provided, that the medical board shall certify that such member is mentally or physically incapacitated for further performance of duty, that such incapacity is likely to be permanent and that such member should be retired.

The section defines disease:

> Disease under this section shall mean heart disease or any disease of the lungs or respiratory tract and shall be presumed to have been contracted while on active duty as a result of strain or the inhalation of noxious fumes, poison or gases.

Plaintiff does not claim an injury. Rather he contends he has a disease which, as a matter of law, brings him within the statute.

Two legal issues are presented. One is whether the definition of disease in section 411.6(5) is exclusive for purposes of its coverage. The other is whether, if it is exclusive, hypertension is included in the definition.

■ We believe the definition is exclusive. The legislature has exercised its right to be its own lexicographer. It has plainly limited the meaning of disease under section 411.6(5) to diseases which come within the statutory definition of the term. Moreover, it has added a conclusive presumption that those diseases are job related. *See Reisner v. Board of Trustees*, 203 N.W.2d 812, 814–15 (Iowa 1973).

■ Because the definition is exclusive, plaintiff was entitled to accidental disability retirement only if he established as a matter of law that he had a disease within the definition. The University of Iowa physicians who examined him pursuant to section 411.6(5) diagnosed his problem as hypertension. His own physician agreed. None of the doctors categorized hypertension as heart disease.

Plaintiff's doctor testified that hypertension is a disease of the cardiovascular system which includes the heart. He also testified:

Q. ... So at this time is what Kevin has classified as heart disease or something that could cause heart disease ultimately? A. It's something that could cause heart disease ultimately.

One of the University of Iowa physicians testified as follows:

Q. Could you say at this time that Kevin Benson has heart disease? A. ... [A]t this point, he does not have evidence of damage to his heart which would be one of the possible consequences of high blood pressure. So he doesn't have what we would call hypertensive heart disease. He does have hypertension which is classified as a cardiovascular disease but not strictly speaking a heart disease.

When asked a similar question, a second University of Iowa doctor replied: "... [N]ot with the information we have at this point. Clearly if pressure is not controlled, one develops a heart disease."

We do not believe this evidence required the board to find as a matter of law that plaintiff had heart disease within the meaning of the statute. Although the physicians gave the term its ordinary medical meaning, we have no reason to believe the legislature intended the statutory term to have a different meaning. See § 4.1(2). If the legislature intended hypertension to be covered it could have used language similar to that covering respiratory tract diseases.

Plaintiff's reliance on *Butler v. Pension Board*, 259 Iowa 1028, 147 N.W.2d 27 (1966), is misplaced. In that case medical evidence showed the plaintiff had, in addition to hypertension, "symptoms and signs of heart disease secondary to high blood pressure and coronary artery heart disease." *Id.* at 1031, 147 N.W.2d at 28. The court found this evidence was uncontroverted and established the claim of heart disease under the statute. *Id.* at 1034, 147 N.W.2d at 29. No such evidence exists in this case.

We hold that the district court did not err in sustaining the decision of the board.

AFFIRMED.