Kent M. **LARSEN**, Appellee,

v.

**BOARD OF TRUSTEES OF the POLICE RETIREMENT SYSTEM OF the CITY OF SIOUX CITY, Iowa,** Appellant.

No. 86–71.

Supreme Court of Iowa.

March 18, 1987.

George A. Carroll, Asst. City Atty., Sioux City, for appellant.

Dennis McElwain and MacDonald Smith of Smith & Smith, Sioux City, for appellee.

HARRIS, Justice.

The challenge in this statutory pension case is a limited one. There is no disagreement with the trial court findings that plaintiff Larsen, who served as a Sioux City police officer, suffers from systemic lupus erythematosus, a debilitating and life-threatening disease, complicated in his case by a "history of congestive heart failure due to aortic valvular insufficiency" and numerous other health problems. It is undisputed that, because of his heart and lung disease, he is entitled to some type of disability pension from defendant retirement system. The only question presented by the parties is whether the disability is job related. If it is the pension benefits are enhanced.

Defendant board found the disability is not job related. On review the district court held that the disability is job related. We affirm.

The stakes are high. If Larsen's disease is job related it qualifies him for an accidental disability pension under Iowa Code section 411.6(5) (1985) and he would receive 66⅔% of his average final compensation in benefit payments under section 411.6(6). Under an ordinary disability pension Larsen would receive forty percent of his average final salary in benefit payments. Iowa Code § 411.6(4) (1985).

Defendant board was at first evenly divided on the question, but on a five-to-two vote, eventually reached its conclusion that Larsen's condition was not job related. Three votes were changed on the basis of medical opinions solicited by the board, especially one from E.O. Theilen, M.D., a professor in the cardiovascular division of the University of Iowa College of Medicine. But Dr. Theilen's opinion is certainly no ringing pronouncement for the board's view. The doctor first stated that, although the time of onset of Larsen's aortic insufficiency is "unknown," aortic insuffi-

ciency due to lupus is "unusual." He said, "There is a reasonable presumption that the aortic insufficiency may have been a preexisting condition." In response to another question Dr. Theilen suggested that evidence "is rather weak" that the condition in Larsen's aortic valve can be traced to lupus. Finally, Dr. Theilen said, "It is not likely that aortic insufficiency alone was disabling at the onset of [Larsen's] illness...." The doctor expressed no opinion on whether Larsen's aortic insufficiency, standing alone and in the absence of his contraction of lupus, would have become "totally and permanently incapacitating."

The district court found that Iowa Code section 411.6(5)[1] had been misapplied by the board and concluded that Larsen is entitled to the enhanced benefits which are appropriate for job-related disabilities.

On appeal to this court the board seeks to reinstate its conclusion that the disease is not job related on the basis of lack of credible medical knowledge on its cause. In its brief on appeal the board states the controlling issue in the case this way:

> The question before the court is simply stated: whether the Plaintiff, who suffers from [systemic lupus erythematosus] of unknown etiology, is entitled to an accidental disability pursuant to Section 411.6(5), Iowa Code?

■ We have interpreted the presumption under section 411.6(5) in a number of cases. Most illustrative are two cases cited by the district court *Riesner v. Board of Trustees of the Fire Retirement System of Dubuque*, 203 N.W.2d 812 (Iowa 1973), and *Benson v. Fort Dodge Police Pension Board of Trustees*, 312 N.W.2d 548 (Iowa 1981). In *Reisner* we explain the officer's burden is only to show existence of the disease, not that it "was incurred in or aggravated by the actual performance of duty at some definite time and place...." *Reisner*, 203 N.W.2d at 815. Following a showing of the disease it is presumed to be

job related. *Id.* In *Benson* we stated that section 411.6(5) provides a "conclusive presumption" that the disease is job related. *Benson*, 312 N.W.2d at 551.

The board would have us disavow our statement in *Benson* which describes the presumption as conclusive but the board has no factual basis here for such a request.

■ It makes no difference in this case whether the presumption is conclusive or rebuttable. The district court must be affirmed in either event. If the presumption is conclusive then no medical evidence on the cause of the disease would support the board's finding. If the presumption that the disease is job related is merely rebuttable, the board in this case misapplied the law because there was no evidence at variance with the presumption. The medical evidence, at most, merely indicated that no one knows what causes the disease. Lack of such knowledge is the very reason a presumption is needed.

The board misapplied the law in finding Larsen's disease is not job related. The district court was correct in so holding.

AFFIRMED.

All Justices concur except NEUMAN, J., who concurs specially, and WOLLE, J., REYNOLDSON, C.J., McGIVERIN and SCHULTZ, JJ., who dissent.

NEUMAN, Justice (concurring specially).

I concur in the majority opinion because I agree that the presumption of section 411.6(5) has not been rebutted. However, for the reasons advanced in division I of the dissent, I think the presumption is rebuttable.

WOLLE, Justice (dissenting).

The defendant board as fact finder determined that the plaintiff's disabling disease, systemic lupus erythematosus, was not "in-

---

**1.** In defining the police officers and firefighters entitled to retirement pensions, § 411.6(5) expressly includes heart diseases and any diseases of the lungs or respiratory tract. It also provides that such diseases "shall be presumed to have been contracted while on active duty as a result of strain or the inhalation of noxious fumes, poison or gases."

curred in or aggravated by the actual performance of duty," a statutory prerequisite for accidental disability benefits. Iowa Code § 411.6(5) (1985). The majority opinion overturns that fact-bound decision on alternative theories: (1) the statutory presumption of section 411.6(5) is a "conclusive presumption," or (2) in any event "there was no evidence at variance with the presumption." I dissent because I read differently than the majority the Iowa law governing the first point and the evidence pertinent to the second point. I do agree with the majority that one potential issue— whether lupus is a heart or lung disease— was not argued and therefore need not be addressed.

I. Ten years ago, in *Carstensen v. Board of Trustees*, 253 N.W.2d 560 (Iowa 1977), our court was required to interpret and apply the same section 411.6(5) presumption when another police officer contended his disabling heart disease had been contracted or aggravated while on active duty. We there held the presumption could be and was in fact rebutted by a physician's testimony that the plaintiff's "incapacity for duty was not incurred in or aggravated by actual performance of duty at some definite time or place." *Id.* at 564–65. That *Carstensen* holding extended beyond our earlier decision in *Reisner v. Board of Trustees*, 203 N.W.2d 812, 815 (Iowa 1973), where we briefly mentioned the presumption while upholding the board's conclusion that the plaintiff had not established he was totally and permanently disabled. Under *Carstensen*, the plaintiff initially has the benefit of the presumption that a heart or lung disease was job-connected, but the presumption can be "effectively overcome or rebutted" by evidence considered by the board. 253 N.W.2d at 565.

I recognize that our court in 1981 cited *Reisner* in characterizing the section 411.6(5) presumption as "a conclusive presumption." *Benson v. Fort Dodge Police Pension Board of Trustees*, 312 N.W.2d 548, 551 (Iowa 1981). That comment in *Benson* is pure dictum. The plaintiff in *Benson* was denied disability benefits when we upheld the board's determination that hypertension was not a heart disease within the meaning of the statute. *Id.*

In summary, then, the majority's characterization of the presumption as conclusive is based on *Benson* dictum that cited only *Reisner* dictum and neither mentioned nor explained away the intervening contrary *Carstensen* holding. The board's determination that the presumption was rebuttable, on the other hand, is rooted in the *Carstensen* holding. I would disapprove the dictum in *Benson* and follow the *Carstensen* holding that the statutory presumption is rebuttable.

I reject the plaintiff's contention that our legislature intended the presumption to be conclusive. We should consider the "consequences of a particular construction." Iowa Code § 4.6. Did our legislators really intend to allow disability benefits even when a heart or lung disease was without question entirely unrelated to the employment, for example when brought about solely by excessive cigarette smoking?

I believe the Iowa Legislature intended the presumption to be rebuttable and used its ordinary language to express that meaning. *See* Iowa Code § 4.1(2). When our legislature has intended a presumption to be conclusive in other contexts, it has clearly expressed that meaning by using the words "conclusively" or "conclusive" to describe the presumption. *See, e.g.,* Iowa Code § 87.12 (for purposes of compensation liability insurance, it "shall be conclusively presumed that the work and operation of any and all coal mines ... is an extra hazardous business...."); Iowa Code § 558.8 (affidavits explanatory of title "shall raise a presumption from the date of recording that the purported facts stated therein are true;" after three years "such presumption shall be conclusive"); Iowa Code § 622.62(3) (certain court actions "shall be conclusively presumed to be lawful"); Iowa Code § 633.237 (under identified circumstances "it shall be conclusively presumed that the [surviving spouse] consents to the provisions of the will and

elects to take thereunder"). Our rule of thumb should be that a statutory presumption is rebuttable, not conclusive, unless the legislature has clearly expressed the contrary intent by saying it is conclusive.

II. I also find sufficient evidence to uphold the board's factual determination that the plaintiff's disabling lupus disease was not incurred in or aggravated by the police work. That finding of ultimate fact would overcome the section 411.6(5) presumption.

Our narrow scope of review in this certiorari action is to determine whether the board committed an error of law, not to determine whether we agree with the board's evaluation of the evidence. *State v. Cullison,* 227 N.W.2d 121, 126 (Iowa 1975); *Reisner,* 203 N.W.2d at 814 ("We consider only whether the decision is supported by any substantial competent evidence, and the burden of showing illegality rests upon him who asserts it."). We review the evidence in the light most favorable to the board's decision.

The board had before it not just the evidence mentioned in the majority opinion but also the following opinion of a medical doctor that goes significantly beyond his initial "unknown etiology" comment:

> Systematic lupus erythematosus is of unknown etiology. *There is no evidence in the file to indicate that factors relating to police work, such as injury or stress, can be considered as causing this serious medical illness.* This diagnosis apparently was firmly established in May, 1984, and heart murmurs were first noted sometime in 1984 along with a serious episode of pneumonia.

(Emphasis added.) From that medical opinion the board reasonably concluded that whatever caused or aggravated the lupus, it was not the plaintiff's work as a police officer.

Here, as in *Reisner, id.* at 815, and *Carstensen,* 253 N.W.2d at 564–65, the medical evidence was in direct conflict on critical issues which the board resolved against each plaintiff. I would uphold the board's determination that lupus was not a job-connected disease. Consequently I would reverse the district court decision and annul the writ of certiorari.

REYNOLDSON, C.J., and McGIVERIN and SCHULTZ, JJ., join this dissent.