371 S.E.2d 70

**SOUTHWESTERN COMMUNITY ACTION COUNCIL, INC.**

v.

**CITY OF HUNTINGTON HUMAN RELATIONS COMMISSION, Elaine Baker, Chairperson; Joyce Morris, Hazel Bond, and Patricia McBrown.**

**No. CC976.**

Supreme Court of Appeals of West Virginia.

June 30, 1988.

J. Grant McGuire, Huntington, for appellee.

Nancy Matthews, Herbert Henderson, Huntington, for appellants.

NEELY, Justice:

The Circuit Court of Lincoln County, on its own motion, has certified to us the following question:

"Whether or not a final order issued by the Huntington Human Relations Commission is reviewable by the Circuit Court of Lincoln County in accordance with the West Virginia Human Rights Act, the Huntington Human Relations Ordinance, and the West Virginia Administrative Procedures Act?"[1]

We conclude that a decision by a local human relations commission is not subject to judicial review under the APA and, therefore, the Circuit Court of Lincoln County has no authority to review the Commission's final order.

The parties to this proceeding stipulate the following facts. The Huntington Human Relations Commission (Commission) is a local human relations commission created by city ordinance in 1977 under authority, granted by State law.[2] The Southwestern Community Action Council, Inc. (Southwestern), is a nonprofit organization that does business in Cabell, Mason, Lincoln, and Wayne counties. The complainants filed age-discrimination complaints with the Commission following the termination of their employment as bookkeepers at Southwestern. After conducting evidentiary hearings, the Commission entered a final order dated 4 October 1985, finding that Southwestern had unlawfully discriminated against the complainants on the basis of age. It ordered reinstatement with back pay and full restoration of benefits, attorneys' fees, and $10,000 for emotional and mental suffering.

Southwestern then petitioned the Circuit Court of Lincoln County for appellate re-

1. *W.Va. Code*, 29A–5–4 [1964], that part of the APA that authorizes judicial review of agency decisions provides, in part:

"(a) Any party adversely affected by a final order or decision in a contested case is entitled to judicial review thereof under this chapter, but nothing in this chapter shall be deemed to prevent other means of review, redress or relief provided by law.

"(b) Proceedings for review shall be instituted by filing a petition, at the election of the petitioner, in either the circuit court of Kanawha county, West Virginia, or with the judge thereof in vacation, *or in the circuit court of the county in which the petitioner* or any one of the petitioners resides or *does business*, or with the judge thereof in vacation, within

thirty days after the date upon which such party received notice of the final order or decision of the agency." (Emphasis added).

2. *W.Va.Code*, 5–11–12 [1967], provides, in part, as follows:

"(a) The legislative body of a political subdivision may, by ordinance or resolution, authorize the establishment or membership in and support of a local human relations commission. The number and qualifications of the members of any local commission and their terms and method of appointment or removal shall be such as may be determined and agreed upon by the legislative body, except that no such member shall hold office in any political party."

view, invoking the judicial review provision of the APA, *W.Va.Code*, 29A–5–4 [1964], (see text, *supra* note 1), which provides for review by the circuit court of any county in which petitioner does business. In its petition to the circuit court, Southwestern noted that the ordinance that created the Commission in 1977 stated the APA was applicable to its proceedings.

The Commission moved to dismiss Southwestern's appeal because the circuit court lacked subject matter jurisdiction. The Commission argued that a local human relations commission created under authority of *W.Va.Code*, 5–11–12 [1967], is not an "agency," as defined by the APA and thus Southwestern had improperly invoked the APA's judicial review provision. The Commission pointed out that Southwestern could seek and, in fact, had sought judicial review by writ of certiorari in the Circuit Court of Cabell County under *W.Va.Code*, 53–3–1 [1923] and *W.Va.Code*, 53–3–2 [1923].[3] The circuit court denied the Commission's motion to dismiss Southwestern's appeal and certified the above quoted question to us.

The inquiry is whether the Commission is an "agency" covered by the APA. The APA defines "agency" as "any *state* board, commission, department, office or officer authorized by law to make rules or adjudicate contested cases, except those in the legislative or judicial branches[.]" (Emphasis supplied).

■ It is clear from this definition and from a reading of the act as a whole, that the APA was designed to regulate the administrative proceedings of state, not local, agencies.[4] When the legislature originally enacted the APA in 1964, it defined "agency" in virtually the same language as employed by the drafters of the 1961 version of the Model State Administrative Procedure Act.[5]

Courts that have considered the question in states with similar statutory language have uniformly concluded that the APA applies only to state, not local governmental entities.[6] In *Benson v. Fort Dodge Police Pension Bd. of Trustees*, 312 N.W.2d 548 (Iowa 1981), the Supreme Court of Iowa concluded that a local pension board was not an "agency," subject to that state's administrative procedure act, and thus judicial review of the board's action was not available under the Iowa APA. In deciding that the local pension board was not a board "of the state," the Iowa court stated:

> In the sense that the pension board is established under state law, it is a creature of the state. *See* § 411.2. However, it has limited geographical jurisdiction, its members are locally selected, and it makes its own rules. § 411.5. The funds which it administers are derived from member contributions and city appropriations. §§ 411.1(15), 411.8, and 411.11. Pensions are a liability of the city. § 411.12.

> Although the board is a creature of state law, it thus functions in a specific local geographical area and is locally administered and controlled. We believe

3. *W.Va. Code*, 53–3–2 [1923], entitled "When Certiorari Lies," reads, in part:
"In every case, matter or proceeding, in which a certiorari might be issued as the law heretofore has been, and in every case, matter or proceeding before a county court, council of a city, town or village, justice or other inferior tribunal, the record or proceeding may, after a judgment or final order therein, ... be removed by a writ of certiorari to the circuit court of the county in which such judgment was rendered, or order made[.]"

4. We noted in *Mason Co. Bd. of Educ. v. State Superintendent of Schools*, 160 W.Va. 348, 234 S.E.2d 321 at 322 (1977), without discussion, that a county board of education, not being a State agency, is not subject to the APA.

5. Section 1 of the Model State Administrative Procedure Act states, in part: "As used in this Act: (1) 'agency' means each state [board, commission, department, or officer], other than the legislature or the courts, authorized by law to make rules or to determine contested cases[.]" See 14 Uniform Laws Annot. 371 (1980).

6. *See Arthur D. Little, Inc. v. Commissioner of Health & Hospitals of Cambridge*, 395 Mass. 535, 481 N.E.2d 441 (1985); *Fisher v. Housing Auth. of City of Omaha*, 214 Neb. 499, 334 N.W.2d 636 (1983); *1777 Penfield Rd. Corp. v. Morrison-Vega*, 116 A.D.2d 1035, 498 N.Y.S.2d 653 (1986); *Riggins v. Housing Auth. of Seattle*, 87 Wash.2d 97, 549 P.2d 480 (1976).

its function determines its character as a local agency despite its origin in state law. Therefore we hold that it is not a board of the state subject to the IAPA. 312 N.W.2d at 550.

■ The same logic applies here because the Commission functions as a local agency created by city ordinance, even though the authority to create the agency is granted by state law.

■ Southwestern argues that the APA should still apply to the Commission because the ordinance creating the Commission so specifies. A local government is certainly free to decide that the procedure of a local board or commission it creates will be governed by the APA. However, the city has no power to confer jurisdiction on a circuit court.

As noted previously, the Circuit Court of Cabell County has jurisdiction to review the decision of the commission by writ of certiorari. Had the state legislature stated that the provisions of the APA apply to the activities of the local human relations commissions, the Circuit Court of Lincoln County would have appellate jurisdiction to review the commission's decision in this case. The city itself, however, has no authority to affect the jurisdiction of the circuit courts, either directly, or indirectly by applying the provisions of the APA to a commission created by it.[7]

Southwestern proposes that our decision in *Huntington Human Relations Commission v. Realco, Inc.,* 175 W.Va. 24, 330 S.E.2d 682 (1985) should affect our ruling here.

In *Realco,* the question before us was whether a local human rights commission has the power to issue subpoenas. We held that the legislature intended to authorize local government subdivisions to give

their local human rights commissions the power to seek subpoenas from the appropriate circuit court.

The power to subpoena may, by a proper ordinance and in conformity with the State Administrative Procedures Act, *W.Va.Code,* 29A–1 *et seq.,* be delegated by a local governmental entity to a Human Relations Commission, organized under *W.Va.Code,* 5–11–12 [1967]. The Commission must, of course, acquire all subpoenas from the appropriate circuit court under *W.Va.Code,* 8–12–2(c) [1969]. 175 W.Va. 26, 330 S.E.2d at 684.

This latter provision *empowers* cities to require the production of evidence and specifies that the city may seek a subpoena from the circuit court of the county in which the city is located. The City of Huntington delegated to its Human Relations Commission this power that had been clearly granted the city by the state legislature.

The question of whether a city can delegate its subpoena powers to a commission is different from the jurisdictional question presented here. In this case, the state legislature did not make the local human rights commissions subject to the APA, nor did the legislature try to delegate to local governments the power to affect the jurisdiction of the circuit courts.

Accordingly, we answer the certified question in the negative. The circuit court erred when he denied the Commission's motion to dismiss Southwestern's appeal.

Certified question answered.

---

**7.** As the Supreme Court of Iowa stated in *Molitor v. City of Cedar Rapids,* 360 N.W.2d 568 (Iowa 1985):

The constitutional and statutory framework makes jurisdiction of state courts "a state affair rather than a municipal affair." 2 E. McQuillan, *The Law of Municipal Corporations* § 4.95 at 165 (1979). If municipal corporations had the power to confer jurisdiction on the district court, the jurisdiction of the

court potentially could be fragmented into as many components as there are municipalities. 360 N.W.2d at 569.

In *Molitor,* and in *Silver v. City of Olmsted Falls,* 20 Ohio App.3d 361, 486 N.E.2d 852 (1984), the courts held that a municipality has no authority to confer jurisdiction on a court of the state, nor can it modify or regulate state court proceedings in any way.