William E. GRAHAM and Velda Irene Graham, Appellees,

v.

John BAKER, Betty Brown, Iowa Farmer/Creditor Mediation Service, Inc., Defendants,

Allen E. Henry and Cindy J. Henry, Appellants,

and

Thomas J. Miller, Attorney General of Iowa, Intervenor.

No. 88–1087.

Supreme Court of Iowa.

Oct. 18, 1989.

Jerrold Wanek of Garten & Wanek, Des Moines, for appellants.

Jeffrey G. Flagg, Des Moines, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, NEUMAN, and SNELL, JJ.

SNELL, Justice.

In 1979, the Henrys purchased a parcel of agricultural land from the Grahams under a real estate contract requiring annual payments. During the course of the next several years, as commodity prices fell and the farm economy worsened, it became increasingly more difficult for the Henrys to make those annual payments. As a result, the parties agreed to some minor adjustments to the contract that allowed the Henrys to maintain their end of the bargain until December 1, 1987, when they were unable to make their annual payment.

The Grahams enlisted the services of attorney George Flagg, granting him a power of attorney in relation to the contract. On December 29, 1987 Flagg served the Henrys with notice of forfeiture. Iowa Code section 654A.6 (1987) requires a creditor to request mediation and obtain a mediation release before undertaking forfeiture proceedings. For this reason the notice of forfeiture was withdrawn and a mediation session eventually was held on February 19, 1988.

At that session, Flagg refused to cooperate with the mediator, denying the Henrys any opportunity to put forward their proposals for resolving the situation, and demanding that he be given a mediation release. It was clear that Flagg was hostile to the Henrys, the mediator, and the mediation process. He issued an ultimatum that the Henrys either sell the land within thirty days and remit the balance due on the contract to the Grahams or acquiesce in its forfeiture. As the meeting went on, Flagg became increasingly more agitated and belligerent, seizing upon statements made by the Henrys' attorney to accuse them of bad faith in failing to pay and continuing to demand that his client be given a mediation release.

Basing its decision on Flagg's behavior, the mediation service refused to issue the Grahams a release, granting instead an extra thirty days to attempt mediation. In spite of the fact that no release had been issued, Flagg filed and served a second notice of forfeiture on the Grahams' behalf shortly after the February 19 mediation session. The Henrys brought suit to enjoin the Grahams from continuing forfeiture proceedings, based upon the Grahams' failure to obtain a mediation release. The district court granted the Henrys an injunction, and the Grahams went to court seeking what they characterized as a writ of mandamus to force the mediation service to issue the release. After a hearing, the court ordered that a release be granted and the Henrys appealed.

The district court based its decision to grant the Grahams' request for a mediation release on two distinctly different procedural theories. In the first, the court relied upon our decision in *Salsbury Laboratories v. Iowa Department of Environmental Quality*, 276 N.W.2d 830, 835 (Iowa 1979), to recharacterize the Grahams' petition as an appeal for review of agency action pursuant to Iowa Code chapter 17A (1987). As an alternative theory for its decision, the court adopted the Grahams' characterization of their action as an application for writ of mandamus.

Which of these characterizations is correct is important because jurisdictional questions will have an impact upon our scope of review, and upon which provisions of the Code apply to the facts of the case. If this action is in fact a petition for judicial review of an agency decision, our review will be at law. *See e.g., Iowa Bankers Ass'n v. Iowa Credit Union*, 335 N.W.2d 439, 448 (Iowa 1983); *Iowa Ind. Comm'r v. Davis*, 286 N.W.2d 658, 660 (Iowa 1979);

*Community Action Research Group v. Iowa State Commerce Comm'n,* 275 N.W.2d 217, 218–19 (Iowa 1979). If the Grahams' suit was correctly filed as an application for writ of mandamus, invoking the original jurisdiction of the trial court, our review will be de novo. *Osborn v. City of Cedar Rapids,* 324 N.W.2d 471, 474 (Iowa 1982).

Chapter 654A of the Code sets up the "farm mediation service." It initially names the attorney general or the attorney general's designee to serve as a "farm crisis program coordinator." Iowa Code § 654A.2 (1987). It requires that the farm crisis program coordinator contract with a *private* nonprofit organization to provide the actual mediation services between farmer and creditor. Iowa Code § 654A.3 (1987). The question before us, then, is whether the private organization with which the attorney general contracted to provide this service properly may be characterized as a state agency for purposes of applying the judicial review provisions of Iowa Code section 17A.19 to its decisions.

The term "agency" is defined in the Iowa Administrative Procedures Act as:

> [E]ach board, commission, department, officer or other administrative office or unit of the state. "Agency" does not mean the general assembly, the judicial department or any of its components, the office of consumer advocate, the governor or a political subdivision of the state or its offices and units.

Iowa Code § 17A.2(1) (1987).

■ It is clear that the attorney general or the attorney general's designee, when acting in his or her capacity as farm crisis coordinator, is a state agency for purposes of chapter 17A. The legislature made this explicit in mandating that the coordinator adopt rules for mediation in accordance with chapter 17A. Iowa Code § 654A.14 (1987). It is also a basic tenet of the Iowa Administrative Procedure Act that an agency that acts under the auspices of another agency is subject to chapter 17A. It would be incorrect, however, to assume that all private contractors who perform services authorized by statute under con-

tract with a state agency are themselves state agencies. Thus, even though the private nonprofit organization that is contracted to perform the actual mediation is partially a "creature of the state," it does not necessarily follow that the mediation service is a state agency. In determining whether the service is an "administrative office or unit of the state," we must apply a functional test. *See Benson v. Fort Dodge Police Pension Bd.,* 312 N.W.2d 548, 550 (Iowa 1981).

■ In *Benson,* we held that a local pension board was not a state agency, even though it was established by state law. 312 N.W.2d at 550. In making this determination, we considered several factors, including the scope of the putative agency's authority, how it was administered and controlled, the source of its funds, the derivation of its rules, and the selection of its members. *Id.* at 550. We must balance the fact that state law authorizes a state agency to contract with a private organization for farm debt mediation against these other factors in order to make our determination. Our application of the functional test outlined in *Benson* leads to the conclusion that the farm mediation service is not a state agency.

The scope of authority granted to the mediation service is minimal. The requirements placed upon creditors by chapter 654A are procedural, adding an additional step in the process required for forfeiture, and do not affect substantive rights. *First Nat'l Bank in Lenox v. Heimke,* 407 N.W.2d 344, 346 (Iowa 1987). The procedural requirements imposed by the statute mandate only that a creditor request mediation and participate therein. Iowa Code § 654A.6 (1987). The statute grants no coercive authority to the mediation service to impose a solution on the parties. It mandates, instead, that a release not be granted until the creditor has participated in at least one mediation meeting. Iowa Code § 654A.11(3) (1987).

Chapter 654A prescribes no particular type of administrative controls to be placed upon the mediation service. Its status as a private corporation, rather than chapter

17A, governs its administration. In fact, the corporate body that functions as the "farm mediation service" is created pursuant to Iowa Code chapter 504A, rather than chapter 654A. The mediation service derives its funds through a contract with the state, calling for an hourly rate for services performed, rather than via a direct legislative appropriation. Rulemaking authority is granted to the attorney general or the attorney general's designee, not to the mediation service. Iowa Code § 654A.14 (1987). Likewise, employees of the mediation service are not public employees, as the statute itself makes clear. Iowa Code § 654A.3 (1987).

Our next task is to determine whether an action for mandamus properly can be filed against the farm mediation service, a private corporation. Generally, mandamus may issue to compel a person, board, corporation, officer, or inferior court to perform a duty that arises by operation of law. 55 C.J.S. *Mandamus* § 1 (1948). Our mandamus statute provides that the writ may issue to compel an inferior tribunal, board, corporation, or person to act or not to act. Iowa Code § 661.1 (1987). In this case, the farm mediation service performs a duty which arises as a result of the operation of Iowa Code chapter 654A. We have held that where a duty is imposed by law upon a private corporation, a party seeking to enforce that duty may proceed by an action for mandamus. *Middle States Utilities Co. v. City of Osceola*, 231 Iowa 462, 1 N.W.2d 643, 645 (1942). In addition, the mediation service's duties, imposed by statute, are affected with a public interest. Where such a public interest is implicated by a corporation's failure to perform its statutorily mandated duty, a mandamus proceeding is proper. *Johnson v. Interstate Power Co.*, 187 F.Supp. 36, 40–41 (D.S.D.1960). Hence, there is no procedural bar to the Graham's action for mandamus in this case.

The core of the Henrys' appeal presents us with the question of whether Flagg's behavior at the mediation proceeding constitutes "participation" as that term is intended by the statute. Iowa Code § 654A.11(3). Our review is de novo. *Osborn*, 324 N.W.2d at 474. Section 654A.11 provides for three types of mediation release. If the parties agree to a resolution of their difficulties short of forfeiture or foreclosure, they sign an agreement drafted by the mediator which becomes a binding contract and is characterized as a mediation release. Iowa Code § 654A.11(1)(2). If the borrower waives mediation or an agreement is not reached, the parties may sign a statement prepared by the mediator stating that there is no agreement. Iowa Code § 654A.11(3) (1987). If one of the parties refuses to sign the statement, the statute requires the mediator to sign it. The statement is characterized as a mediation release. The single requirement is that the creditor "participate" in one mediation session. Iowa Code § 654A.11(3) (1987).

The word "participate" means "to take part in something (as an enterprise or activity) usu[ally] in common with others." *Webster's Third International Dictionary*. Participation "means to take part in, to receive or have a part in an activity." *Burrell v. Ford Motor Co.*, 386 Mich. 486, 192 N.W.2d 207, 211 (1971).

> The word 'participating' has no clear and unmistakable meaning. In its primary sense, it means simply a sharing or taking part with others but when it is applied to a particular situation, it takes on secondary implications that render it ambiguous. Under some circumstances it may denote a mere passive sharing while under other circumstances an implication of active engagement may accompany its use.

*Fireman's Fund Indem. Co. v. Hudson Associates, Inc.*, 91 A.2d 454, 455, 97 N.H. 434 (1952). Given Flagg's attitude during the session, the mediator urged his supervisors not to issue a release, basing his recommendation upon standards for gauging participation formulated by the mediation service itself. His supervisors concurred and no release was issued. By so doing, however, the mediation service arrogated to itself a discretionary function not granted by the statute. In the first instance, the service's standards are in fact rules of

good conduct for the participants in mediation sessions. Nowhere in chapter 654A is the mediation service authorized to formulate or adopt such guidelines. Flagg attended the mediation session as required, and participated to the extent of stating that his position was not negotiable.

The statute does not give the mediation service the power to compel either creditor or debtor to negotiate. It merely attempts to set up conditions in which the parties might find a solution to their problems short of forfeiture or foreclosure. In this regard, the mediator's duties are to *listen* to both creditor and borrower, *attempt* to mediate the situation, *advise* the parties as to the existence of assistance programs, *encourage* adjustment or refinancing of the debt, and to *advise, counsel,* and *assist* the parties in agreeing as to future financial relations. Iowa Code § 654A.9 (1987). The choice of such words is a clear indication that the role of the mediation service is advisory only. In this case, the mediator did all that is contemplated by section 654A.9.

■ Flagg's behavior which ranged between acrimony and truculency precluded any beneficial result to the parties from the mediation process. It has cost his clients considerable time and expense. Nevertheless, his inappropriate behavior is not determinative. We find that Flagg's presence at the mediation meeting satisfied the minimal participation required by the statute.

The statute commands that the mediator *shall* sign the release if one of the parties refuses to attach his or her signature to it. Iowa Code § 654A.11(3) (1987). Given Flagg's participation, it was incumbent upon the mediator promptly to draw up the required document, to secure Flagg's signature, and to sign the document himself. In short, the mediator's duty in this instance was ministerial—to sign and issue the release—and allowed him no discretion to refuse. Thus, mandamus should be issued to compel the mediator to prepare the proper statement, affix his signature if the Henrys or the Grahams refuse to sign, and issue the release.

■ The Henrys' second ground for appeal is based upon Iowa Rule of Civil Procedure 29, which requires the compulsory joinder of certain counterclaims. The Henrys contend that Rule 29 required that the Grahams file their petition to compel the mediation service to issue a release as a counterclaim in the Henrys' action to enjoin forfeiture proceedings. This contention confuses counterclaim with third-party practice. A counterclaim, as contemplated by the Iowa Rules of Civil Procedure, is a claim which one of the parties in a suit may assert against an opposing party in the same suit. In the action the Henrys filed against the Grahams to enjoin the forfeiture proceeding, the Iowa Farmer/Creditor Mediation Service was not an "opposing party." The mediation service was not even a party to the Henrys' suit. The Grahams were under no obligation to file their claim against the mediation service in that suit. Iowa R.Civ.P. 29; *see Heinz Plastic Mold Co. v. Continental Tool Corp.,* 114 Wis.2d 54, 337 N.W.2d 189, 193 (Wis.App.1983) (interpreting Federal Rule of Civil Procedure 13(a), which is analogous to Iowa Rule of Civil Procedure 29).

Finally, the Henrys claim that circumstances surrounding issuance of the writ constitute a deprivation of property without due process under both the Iowa and United States Constitutions. They base their appeal on the following set of facts. On March 30, 1988, the Grahams filed their petition asking that the court grant them a writ of mandamus. Six days later, on April 5, the court entered an order setting hearing on the Grahams' petition for April 11, 1988, and additionally ordered that copies of its order, the original notice, and the Grahams' petition be served on the defendants at least five days before hearing.

The essence of the Henrys' argument is that the court erred in scheduling the hearing so quickly after filing of the Grahams' petition. The Henrys claim that the timelines established by the Iowa Rules of Civil Procedure with regard to filing and discovery should have been followed. This contention is based upon a reading of the Iowa Code, section 661.3 (1987), which provides that an action for mandamus be tried

as an equitable action. Section 611.13 further provides that the provisions of the Code with regard to prosecution of a civil action apply to equitable proceedings, "unless the contrary appears."

The Henrys argue that no specific provisions of chapter 661 exempt actions for mandamus from application of section 611.13. An action for mandamus is a summary and extraordinary proceeding. *Reed v. Gaylord,* 216 N.W.2d 327, 332 (Iowa 1974). A summary proceeding is one in which the established course of legal proceedings may be disregarded. Chapter 661 recognizes this principle. Section 661.10 requires that "as nearly as may be," proceedings in an action for mandamus shall be the same as those in an ordinary action. The words "as nearly as may be" indicate a clear understanding of the differences between mandamus and other actions. Mandamus is an action to compel one who, by law, owes a duty to perform that obligation. Mandamus proceedings can be used only to compel the performance of a ministerial act which must be performed on a given state of facts. *Arrow Exp. Forwarding Co. v. Iowa State Commerce Comm'n,* 256 Iowa 1088, 1091, 130 N.W.2d 451, 452 (1965).

The ministerial act here of signing the mediation release was due following the creditor's participation. The record shows that the Henrys do not dispute these facts. The Henrys were not prejudiced by the fact that they were not allowed time for discovery, since Flagg's behavior was irrelevant to the legal issue before the court in the mandamus action. The trial court did not err by not adhering rigidly to the Rules of Civil Procedure.

In this case, the Henrys were granted both notice and an opportunity to be heard. *Roth v. Reagen,* 422 N.W.2d 464, 466 (Iowa 1988). The district court had jurisdiction over the matter and the hearing granted the Henrys was held at a meaningful time and in a meaningful manner. The Henrys' rights to due process were not violated by the district court's handling of the matter.

The judgment of the district court is affirmed.

AFFIRMED.